[No. 16009. Department One. February 19, 1921.]

## In the Matter of the Estate of SAMUEL ANDERSON.[1]

WILLS (7) — TESTAMENTARY CAPACITY — EVIDENCE—WEIGHT AND SUFFICIENCY. Mental capacity to execute a will is sufficiently shown by evidence that decedent, though affected with softening of the brain and subject to intervals of incompetency, was, in the opinion of experts and others, competent at the time the will was executed.

WITNESSES (44)—TESTIMONY OF TRANSACTION WITH PERSONS DECEASED—SUBJECT-MATTER—CAPACITY TO EXECUTE WILL. Rem. Code, § 1211, excluding evidence of transactions with a person since deceased by parties in interest, is not applicable to a will contest upon the issue as to the mental capacity of deceased to execute the will.

Appeal from a judgment of the superior court for Kitsap county, Jurey, J., entered March 11, 1920, upon findings in favor of proponent, admitting a will to probate, after a hearing on the merits. Affirmed.

*J. W. Bryan* and *Troy & Sturdevant,* for appellant.

*Farrell, Kane & Stratton,* for respondents.

PARKER, C. J.—This is a will contest. Christine Clinton, sister of Samuel Anderson, deceased, has appealed to this court from a decree of the superior court for Kitsap county, admitting to probate and establishing, as his last will and testament, a writing signed and executed by him on January 1, 1919. At the time of making the will in question and at the time of his death, Anderson was a bachelor, about sixty years old, living in Kitsap county, in this state. His

[1]Reported in 195 Pac. 994.

only heirs at law, at the time of making his will and also at the time of his death, were his sister, Mrs. Clinton, living near Olympia, in Thurston county; and a nephew living in Kitsap county and a niece living in Sweden, the children of a deceased sister. He was on friendly terms with his sister and his niece, but for some reason did not have a friendly feeling towards his nephew. He was also on very friendly and intimate terms with Mr. and Mrs. Phinney, to whom he left a portion of his property, he being the caretaker of their summer home in Kitsap county during the fall and winter months, where they very often spent their week-ends during those months, on which occasions he was treated almost as a member of their family. He had accumulated in this country an estate of the value of approximately four thousand three hundred dollars, consisting of money in bank, mortgage loans, and other securities. He also had some real property in Sweden, apparently of small value.

By the terms of his will, he left one-half of a two thousand dollar promissory note, secured by mortgage, to his friend, Arthur A. Phinney; a promissory note for one thousand one hundred dollars, secured by mortgage, to his friend, Mrs. Phinney; his real property in Sweden to his niece; and all of his remaining property to his sister, Mrs. Clinton, appointing her executrix of his will. Mrs. Clinton having applied for letters of administration to the superior court for Kitsap county, and alleging that the will was void and of no effect because of duress inducing Anderson to execute it, and also because of his mental incapacity to execute it, Mr. and Mrs. Phinney filed their answer and petition praying that the paper purporting to be Anderson's last will and testament be admitted to probate and established as such. Upon the issues so made, the question of the validity of the will was tried

and submitted to the court, resulting in the court finding that the will was duly executed without duress and that Anderson was mentally competent to execute it, and decreeing accordingly. It is from this decree that Mrs. Clinton has appealed.

As to the alleged duress inducing Anderson to execute the will, we think it sufficient to say that the contentions here made in behalf of appellant rested upon that ground are wholly without support in the evidence. As to the question of mental incapacity on the part of Anderson to execute the will, there is sharp conflict, not only in the opinion testimony, but also in the testimony touching Anderson's actions at and near the time of the execution of the will. He was apparently a man of good physique, strong and healthy, both physically and mentally, up until September, 1918. He then began to be afflicted with ailments which, according to the doctors, developed into what they characterized as softening of the brain. Up until January 1st, the date of the execution of the will, his affliction had progressed to the stage where, at intervals, he was admittedly more or less mentally incompetent; but we think that up to that time the evidence shows, or at least the trial judge was warranted in believing—as he evidently did—that Anderson was, during the larger part of the time, mentally competent, knowing what he was doing and saying, and intelligently comprehending his desires touching the management and disposition of his property.

We think that, up to that time in any event, he may be considered as one who was, generally speaking, mentally competent, with intervals of mental incompetency; rather than one who was, generally speaking, mentally incompetent with intervals of mental competency. In any event, the evidence we think clearly preponderates in support of the conclusion that

he was, on January 1st, the date of the execution of the will, mentally competent to execute such will, having then a full and rational understanding of his desires in that respect. It is true that thereafter his condition did grow worse and on February 15, 1919, Mrs. Clinton, his sister, was appointed guardian of his estate. This, however, it seems, was done more because of the necessity of making certain the legality of the use of his funds in caring for him than for the purpose of otherwise preserving or managing his estate. He died on February 24, 1919.

We feel quite convinced, in view of the manner in which Anderson disposed of his property in the will—that is—the fact that he gave his property to those who manifestly he would under the circumstances feel friendly and well disposed towards, and in view of the "*quantum* of understanding which is requisite to the valid execution of such an instrument" (see *In re Roy's Estate,* 113 Wash. 277, 193 Pac. 682), that we would be wholly unwarranted in disturbing the decree of the trial court admitting to probate and establishing this writing as Anderson's last will and testament.

Relying upon the provisions of Rem. Code, § 1211, contention is made in behalf of appellant that the trial court erred in permitting Mr. and Mrs. Phinney to testify touching the mental condition of Anderson at and near the time of the making of the will, especially in so far as such testimony related to their conversations with him. This contention is presented to us without any argument or citation of authority whatever, other than its mere assertion and the citing of this section of the statute. We note that, prior to the giving of testimony by Mr. and Mrs. Phinney, Mrs. Clinton testified in her own behalf—that is, testified in opposition to the probate of the will—to matters which

would be equally within the claimed prohibition of § 1211, if such prohibition has any application to testimony introduced upon the contest of a will. However, the great weight of authority, and it seems to us the better reason, touching the question of the mental competency of a testator in a proceeding contesting his will, is as stated in the text of 40 Cyc. 2266, as follows:

"The statutes excluding evidence in actions by or against representatives, or relating to transactions with a decedent, are usually held not applicable in proceedings for the probate or contest of a will." *In re Veazey*, 80 N. J. Eq. 466, 85 Atl. 176, Ann. Cas. 1914A 980, and note.

We may also add that, even excluding all evidence of the nature so objected to, we would still be strongly inclined to the conclusion that Anderson executed his will without duress and in full possession of his mental faculties at the time of its execution.

The decree is affirmed.

FULLERTON, HOLCOMB, MACKINTOSH, and BRIDGES, JJ., concur.