[No. 21154. *En Banc.* May 28, 1929.]

MUTUAL RESERVE ASSOCIATION, *Respondent,* v. B. A. ZERAN *et al., Defendants,* MASSACHUSETTS MORTGAGE COMPANY, *Respondent, Cross-Appellant,* RAINIER ELECTRIC COMPANY *et al., Appellants.*[1]

[1]Reported in 277 Pac. 984.

*Baxter, Jones & Hughes, Roberts, Skeel & Holman, Glen E. Wilson, Weter, Roberts & Shefelman,* and *Wendell W. Black,* for appellants.

*Preston, Thorgrimson & Turner,* for appellant Francis Construction Co.

*Paul & Long* and *Bullitt & Kahin,* for cross-appellant Massachusetts Mortgage Co.

*Ray M. Wardall,* for respondent Occidental Sheet Metal Works.

*Lloyd R. Savage,* for respondent Phillips Sand & Gravel Co.

TOLMAN, J.—The plaintiff, Mutual Reserve Association, instituted this action to foreclose two trust deeds given to secure the payment of certain negotiable bonds executed by the defendants Zeran and wife. The Massachusetts Mortgage Company was made a party defendant because of its being the holder of two mortgages, also made by Zeran and wife, which mortgages were junior to the trust deeds held by the plaintiff. By answer and cross-complaint, the mortgage company sought foreclosure of its mortgages, subject only to the trust deeds. The individual defendants, doing business as the Francis Construction Company, were made defendants because they claimed a lien upon the property covered by the trust deeds and the mortgages, accruing because of labor and material furnished by them as contractors for the construction of a building on the mortgaged property. By answer and cross-complaint, they sought the foreclosure of their lien as superior to both the trust deeds and the mortgages. The remaining parties who are now before this court came in by intervention, seeking foreclosure of liens for labor and material furnished as subcontractors, which were also claimed to be superior to the trust deeds and mortgages. The cause was tried out on the merits, resulting in a decree which first awarded judgments against Zeran and wife in favor of Mutual Reserve Association for $78,534.35, in favor of Massachusetts Mortgage Company for $20,248, in favor of Francis Construction Company for $37,642.34, and awarded

priority of lien rights upon the real estate, and foreclosure thereof, in the following order:

First, to the Mutual Reserve Association, upon its trust deed lien; second, to the intervenors to the extent of their various liens; third, to the Massachusetts Mortgage Company upon its mortgage lien; and fourth, to the Francis Construction Company upon its general contractor's lien.

By appeal and cross-appeal, a number of these priorities are questioned, and, after outlining the general situation in order to avoid confusion, each claim will be treated separately, so far as possible.

Early in 1926, Zeran and wife were the owners of the real estate in question, which was then improved only by an old building of very little value. Zeran caused plans and specifications to be prepared for remodeling and rebuilding the old structure into a modern apartment house. These plans and specifications were submitted to the Francis Construction Company, and negotiations were had between Zeran, Francis Construction Company, the reserve association and the mortgage company, resulting in an understanding that negotiable bonds to the amount of $62,500 would be executed by the Zerans secured by a trust deed, as a first lien on the property, running to the reserve association as trustee for the bond holders. A mortgage, junior and subordinate to the trust deed, was also agreed upon, to secure the payment of $15,-000 to be made by the Zerans to the mortgage company, and the proceeds of these loans were to be used to discharge prior liens then against the property, and the overplus was to be advanced to construct the new building. The Francis Construction Company was to have the contract for the construction of the new building on a cost-plus basis, and, according to the plans and specifications then agreed upon, it was estimated

that the cost of the new building would, by a small amount, exceed the proceeds of the loans, and that such small balance was to be carried by the contractor until the building was completed, and the excess cost repaid to the contractor out of rentals received from the completed building.

Accordingly, the trust deed to secure the payment of $62,500 was executed April 27, 1926, and recorded May 24, 1926. The $15,000 mortgage was executed and recorded May 27, 1926. The Francis Construction Company entered into an agreement with Zeran to erect the building on the cost-plus plan, in which agreement was a provision to the effect that, if the borrowed money proved insufficient to complete and pay for the building, the contractor who was bound to pay for all labor and material should be reimbursed out of the accruing rents from the completed building. Up to this time, no change in the plans had been made or suggested.

The contractor started work on May 20, 1926. After the work had progressed for some time, and the contractor had become thoroughly obligated, it was found that the city's building department made certain objections to some of the features specified for the new building, and, in meeting these objections, the architect made radical changes in the plans which added to the cost of the work something like $10,000, and which would increase the value of the improvement to a like extent.

The contractor and the owner Zeran took this matter up with the representative of the Mutual Reserve Association and the mortgage company, and it was finally agreed that the loans should be increased; that of the Mutual Reserve Association from $62,500 to $65,000, and that of the Massachusetts Mortgage Company from $15,000 to $18,000, thus making $5500 more avail-

able for construction purposes. Thereupon a new trust deed was executed to secure a bond issue of $65,000, dated August 18, 1926, and on August 20, 1926, a new note and second mortgage to the Massachusetts Mortgage Company calling for $18,000 was also executed. Both instruments were recorded on August 21, 1926, and the original second mortgage for $15,000 running to the Massachusetts Mortgage Company was released of record on that same day. The original trust deed was not released. The first advance to the contractor under the trust deed was made at just about this time in the amount of $12,000.

It rather clearly appears that the building, as originally contemplated, was estimated to cost in the neighborhood of $60,000. The new revised and detailed plans, to which we have just referred, were submitted to the contractor about a month after he had begun his work, and thereafter these plans seem to have been expanded constantly as the work progressed, and the cost of the building greatly added to without any arrangement as to where the money was to come from to meet the increased costs. The nature of these changes was a complete departure from the original plans, so that, instead of expending $60,000, or less, and having a deficiency of perhaps $2,000 or $3,000 to be repaid out of accruing rentals, the contractor, when the building was finally completed, found it had cost him $91,661.23, and he had a deficit of upwards of $30,-000, for which he filed his lien and asked judgment against the owner.

Coming now to the particular questions here presented, we shall discuss them in what seems to be their logical order.

■ The contractor undertook the work with full knowledge of the plan of financing, and knew that $62,500, to be secured by trust deed, was to be a first

lien, and $15,000, secured by second mortgage, was to be a second lien, both to be superior to any lien which might accrue in his favor. We can find nothing in the record (barring a special defense hereinafter discussed) which will permit him or the subcontractors under him to take precedence over these liens. But the trustee under the trust deed and the mortgage company so far participated in, encouraged and were responsible for the changes in plans and the increased costs, that neither should be permitted to assert as superior to any lien claimant the increased amounts as evidenced by their rewritten instruments.

■ We see no real or vital difference between the positions of the Mutual Reserve Association and the Massachusetts Mortgage Company. True, the latter released its first executed mortgage, while the former did not, but the evidence rather satisfactorily indicates that the mortgage company released upon the belief that the $12,000 then advanced to the contractor paid all obligations incurred by him up to that date, and under such circumstances, equity will be quick to recognize the rights of one who releases a prior lien under a mistake of fact, especially when, as here, it appears that no one was misled to his injury thereby. *Pearce v. Buell*, 22 Ore. 29, 29 Pac. 78; *Wells v. Huffman*, 69 Ind. App. 379, 121 N. E. 840; *Bormann v. Hatfield*, 96 Wash. 270, 164 Pac. 921, L. R. A. 1917E 1052; *United States v. Grover*, 227 Fed. 181; 33 A. L. R. 157, and note.

■ What we have already said indicates that there is no real difference between the various lien claimants so far as being bound by the trust deeds and the mortgages is concerned. The contractor had actual knowledge that the work would be financed by borrowed money so secured, in fact participated in the arrangements by which it was obtained. The subcon-

349

tractors, if any were without such actual knowledge, had constructive knowledge by the recording of the instruments before they began to furnish labor and material, and constructive knowledge is sufficient. The language of our statute, Rem. Comp. Stat., §1132, plainly calls for that conclusion.

■ That the liens of the trust deed and the mortgage date from the time they were filed for record or the parties had actual notice thereof, notwithstanding that the money was advanced after the work commenced, is too obvious to call for discussion. *Home Savings & Loan Association v. Burton,* 20 Wash. 688, 56 Pac. 940. ·

■ It is contended on behalf of the lien claimants that, by the acceptance of the new obligations for the increased amounts, and the acceptance and recording of the new trust deed and the new mortgage, a novation occurred and the original trust deed and mortgage, whether released of record or not, became merged in the new, and of no further effect.

It must be remembered, however, that the contractor participated in the negotiations leading up to the increase of these loans, that they were increased for the purpose, in part at least, of making additional funds available to him with which to carry on the work and pay for labor and material.

To work a novation, it must appear from what was done that the parties intended the new contract to cancel and supersede the original contract, and equity will not assume such an intention unless the intent clearly appears or substantial justice requires it. To assume such an intent under conditions as shown here, would result in injustice and a denial of equity. No one is shown to have been misled or to have changed his position for the worse because of these matters. In fact, the contrary appears. The parties now com-

plaining were benefited thereby and since no one was injured equity will recognize the liens of the original instruments.

Perhaps the principal contention presented here on behalf of the lien claimants is that the Mutual Reserve Association, not being organized as a trust company under our banking law, has no right to act as trustee under a deed of trust, and cannot invoke the power of the courts to foreclose such a trust deed.

It is true that, by our statute, Rem. Comp. Stat., § 3222, corporations are forbidden the right to carry on a trust business, except in compliance with that act, and § 3231 defines "trust business" as doing any of the things referred to in the subdivisions following. Subsection 4 following reads:

"To act as trustee under any mortgage, or bonds, issued by any municipality, body politic, or corporation, foreign or domestic, or by any individual, firm, association or partnership, and to accept and execute any municipal or corporate trust."

If we assume for present purposes, without so deciding, that the banking act prohibits a corporation from acting as a trustee for bond holders under a trust deed, still we find nothing in our statutes which says or intimates that a trust deed shall be void or unenforceable if the trustee be not qualified under the act. Nor would such a provision be logical or likely to serve a proper purpose, because the real parties to such a contract are the property owners on one side and the bond holders on the other. The trustee is a mere nominal party, without interest in the subject-matter, who is named only as the instrument through which the rights of the real parties may be protected and enforced. To penalize the real parties in interest because the trustee has violated a penal statute, would be, we fear, too great a hardship upon the investing public.

Rem. Comp. Stat., § 3380, provides:

"Any person who shall do anything forbidden by this act for which a penalty is not provided in this act, or in some other law of the state, shall be guilty of a gross misdemeanor and be punished accordingly."

And it is, we think, a general rule that, though the offending trustee may be liable to a penalty, that is the only result which follows, and the deed will not be held void unless the statute so directs.

■ Moreover, the incapacity to sue plainly appeared on the face of the complaint and should have been taken advantage of by demurrer, or, if it did not so appear, the issue should have been raised by answer. The failure to so raise the issue at the proper time constitutes a waiver. *Rothchild Bros. v. Mahoney,* 51 Wash. 633, 99 Pac. 1031; *Thompson-Spencer Co. v. Thompson,* 61 Wash. 547, 112 Pac. 655; *Hale v. City Cab, Carriage & Transfer Co.,* 66 Wash. 459, 119 Pac. 837; *North Star Trading Co. v. Alaska-Yukon Pac. Exposition,* 68 Wash. 457, 123 Pac. 605; *Washington Printing Co. v. Osner,* 99 Wash. 537, 169 Pac. 988.

The judgment appealed from must be modified by limiting the first and prior lien of the trust deed to $62,500 and interest on that amount; by placing the mortgage of the Massachusetts Mortgage Company, as originally written for $15,000 and interest on that amount, next in order; by placing the several lien claimants in their proper order next thereafter; and, after such lien claims, allowing the subsequent advances of the Mutual Reserve Association and of the Massachusetts Mortgage Company in their proper amount, with interest, and in their proper order.

■ Being unable to determine from the record that these modifications will be of any substantial advantage to anyone, we direct that each party pay its own costs in this court.

On the going down of the remittitur, the trial court will enter a new and complete decree embodying the modifications herein pointed out.

FULLERTON, BEALS, MILLARD, HOLCOMB, and FRENCH, JJ., concur.

PARKER, J. (dissenting)—I am of the opinion that the release of the $15,000 mortgage and the execution and acceptance of the new $18,000 mortgage effected a complete novation as to the existing lien rights of the subcontractors. The evidence, I think, shows that this releasing of the $15,000 mortgage and the execution and acceptance of the $18,000 mortgage were with full knowledge on the part of the mortgagee of the then existing lien rights of the subcontractors, and thus resulted in their liens becoming prior to the whole of the $18,000 mortgage lien.

I am also of the opinion that the lien claim of the Francis Construction Company is inferior to the whole of the $65,000 indebtedness secured by the trust deeds, notwithstanding $3,000 of that indebtedness was secured by the second of the trust deeds after the accruing of the construction company's lien rights; this because, as I view the record, it appears that this $3,000 increase of the trust loan was brought about at the instance of the construction company as well as at the instance of the owners, and the construction company received the benefit thereof.

My view is that the decree should be affirmed in all respects.

MAIN, J., concurs with PARKER, J.