[No. 25408.   Department One.   May 23, 1935.]

H. B. JONES *et al., Respondents,* v. HARRIET LILLY MACAULAY PEABODY *et al., Appellants.*[1]

*Bogle, Bogle & Gates* and *Ray Dumett,* for appellants Harriet Lilly Macaulay Peabody *et al.*

*Rummens & Griffin,* for appellants Charles Macaulay Peabody *et al.*

*Wright, Jones & Bronson,* for respondents.

MAIN, J.—This action was brought for the purpose of recovering an attorney's fee. The defendants demanded a jury trial, which was denied. The trial to

the court resulted in a judgment sustaining a recovery, from which the defendants appeal.

The respondents H. B. Jones and R. E. Bronson are surviving members of the law firm of Bronson, Jones & Bronson. The other respondents are R. E. Bronson, as executor, and Hallie Bronson, as executrix, of the last will and testament of Ira Bronson, deceased. The appellants Harriet L. Peabody and Alexander M. Peabody are parties to the action in their individual capacity. Harriet L. Peabody and Alexander M. Peabody, as executrix and executor of the estate of Charles E. Peabody, deceased, are likewise appellants. The other appellants are the heirs of Charles E. Peabody, deceased.

Charles E. Peabody died on or about August 26, 1926, leaving a will in which Alexander M. Peabody, Harriet L. Peabody and Ira Bronson were named as executors. By the will, aside from certain minor bequests, all the property of the deceased was given to Harriet L. Peabody, the widow, for her use and benefit during her life, with the remainder after her death to go to the executors and trustees for the uses and purposes set out in the will. It was provided in the will that, in the event the income from the estate should amount to more than fifteen thousand dollars per annum, the executors were to receive, as compensation for their services, five per cent thereof.

The firm of Bronson, Jones & Bronson was employed in the probate proceeding for a sum fixed by the two executors, other than Ira Bronson, at twenty-five thousand dollars. This firm continued to handle the estate until the latter part of the year 1930, when the surviving executors, Ira Bronson having died June 30, 1930, refused to permit the surviving partners to further handle the affairs of the estate. The surviving partners at the time took the position that the probate

of the estate was ready to be closed and distributed; the executors took the position that the estate could not be closed until the death of Mrs. Peabody, inasmuch as she had a life estate.

The property covered by the will was all community property, and the widow's one-half thereof was embodied in that probate proceeding. The appraised value of the estate was more than one million dollars.

The theory of the action was that neither of the surviving executors was able to pay a judgment of twenty-five thousand dollars, if awarded against them individually, but that, were they able to pay such a judgment, it would be a proper claim against the estate, and, therefore, the respondents had a right to take a judgment against the surviving executors and be subrogated to their rights under that judgment to have the same paid by the estate.

It is first contended that the trial court erred in denying a jury trial. There was no relation between the attorneys for the executors and the estate, and they could assert no claim against the estate for their services, but the executors themselves were individually liable. *In re Sullivan's Estate,* 36 Wash. 217, 78 Pac. 945. The will being nonintervention, the attorneys could not take the matter of the fixing of fees into the probate court. They could sue the personal representatives for their fees, and only the personal representatives could ask the court to allow such fees as an expense incurred in the course of the administration. *In re Megrath's Estate,* 142 Wash. 324, 253 Pac. 455, 256 Pac. 503; *In re Peabody's Estate,* 169 Wash. 65, 13 P. (2d) 431. Where, however, the representatives of the estate, in this case the executors, are insolvent, in the sense that they could not pay a judgment against them for the attorneys' fee, an action may be brought against them and after judgment ob-

tained the plaintiffs be subrogated to their rights to be compensated out of the estate.

In 2 Bancroft's Probate Practice, p. 826, it is said:

"Even in the absence of statute permitting the attorney to claim directly for his fees it is declared that if the representative fails to claim allowance in his account for such item on behalf of the attorney, and such representative is insolvent so that the attorney would otherwise be without remedy, there has always been an exception to the common-law rule that the attorney can recover for his services only through the representative."

In *Gates v. McClenahan*, 124 Iowa 593, 100 N. W. 479, it is said:

"There is also another exception which has found approval in several jurisdictions, and it is that, wherever the account of the trustee or executor is in such a condition that he would be entitled to be reimbursed from the funds of the estate, should he pay his creditor, and has become insolvent, or for any reason cannot pay, the creditor may be allowed to take his place, and be paid out of the estate to the same extent. [Citing authorities.]"

In *In re McLure's Estate*, 68 Mont. 556, 220 Pac. 527, it is said:

"To the general rule that the only avenue of relief open to the attorney was an action at law against the personal representative there has always been this exception: If the personal representative were insolvent or out of the jurisdiction the attorney might by an appropriate suit in equity enforce his claim against the estate upon the principle of equitable substitution. [Citing authorities.]"

The basis for this rule, as stated in *Hewitt v. Phelps*, 105 U. S. 393, is this:

"The ground and reason for this rule are, that the trustee has an equity of his own, for reimbursement for all the necessary expenses to which he has been put in the administration of his trust, which he can en-

force by means of the legal title to the trust estate vested in him; and that his creditor, in the cases supposed of his insolvency or absence from the jurisdiction, may resort to the equity of the trustee, upon a principle of equitable substitution or attachment, for his own security.''

While the cases are not directly in point and are upon a different state of facts, the principle underlying the holding in the cases referred to has been adopted by this court, where it is said that equitable subrogation will be applied by courts of equity in all cases where good conscience and equity indicate that a debt paid by one under any sort of legal compulsion ought to be paid by another. *Murray v. O'Brien,* 56 Wash. 361, 105 Pac. 840, 28 L. R. A. (N. S.) 998; *Spokane Security Finance Corp. v. Titus,* 170 Wash. 508, 16 P. (2d) 1053.

The evidence shows that both of the executors individually were insolvent, in the sense that they would not have been able to respond to a judgment of twenty-five thousand dollars against them. Mrs. Peabody had a large interest in the estate, of course, but this would not be available to her until the time of distribution. The case, being one in which it was necessary for the respondents, in order to realize upon a judgment against the executors individually, to resort to equitable subrogation, was one properly triable as an equity case, and there was no error in the refusal of a jury trial.

What has already been said is sufficient answer to the second contention of the appellants, which is that the action was one at law.

The next contention is that the court erred in concluding that there was a contract such as claimed by the respondents, and in refusing to permit the appellants to explain the actual contract. The plain inference from the evidence is that there was a contract.

It was recognized by the surviving executors when they asked for deductions upon the inheritance tax, both under the Federal statute and under the statute of this state. It was recognized in addition to this. With reference to whether such a contract was, in fact, made, it is not necessary to pursue the inquiry further.

Upon the trial, the appellants sought to offer evidence as to conversations with Ira Bronson concerning this contract. This evidence was refused, and the offers of proof are too numerous and too voluminous to undertake to detail them here.

Rem. Rev. Stat., § 1211 [P. C. § 7722], provides that, in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving any right or title by, through or from any deceased person, then a party in interest or to the record shall not be entitled to testify in his own behalf as to any transaction had by him with, or any statement made to him, or in his presence, by any such deceased person. It is said, however, that that statute is not applicable to a probate proceeding. It is generally held that such statutes are not applicable in proceedings for the probate or contest of a will. *In re Anderson's Estate,* 114 Wash. 591, 195 Pac. 994; *In re Zelinsky's Estate,* 130 Wash. 165, 227 Pac. 507. This case, however, was neither a proceeding for the probate nor the contest of a will.

One who has a vested interest in the remainder of an estate, under a statute like the one mentioned, is not competent to testify. *In re Sloan's Estate,* 50 Wash. 86, 96 Pac. 684, 17 L. R. A. (N. S.) 960. That rule would apply to those persons offered as witnesses who came within the designation of heirs. *Coolidge v. Long,* 282 U. S. 582, 51 S. Ct. 306. We recognize that

the protection of the statute may be waived, but we find nothing in the record in this case from which it could be concluded that there was such a waiver. From the beginning of the trial, the respondents proceeded with great care to avoid breaking down the bar of the statute, as they had a right to do. The statute applies to this proceeding, and there was no error in rejecting the offers of proof.

It is next contended that the contract relied upon was void as against public policy. The general rule, no doubt, is that, when a lawyer voluntarily becomes administrator or executor, although he exercises professional skill in the conduct of the estate, he does not thereby entitle himself to additional compensation. *Kuhn's Appeal,* 4 Wash. 534, 30 Pac. 643; *Noble v. Whitten,* 38 Wash. 262, 80 Pac. 451. The executor or the administrator of an estate, even though he may be an attorney, may employ another attorney to assist him in the settlement of an estate, provided that it is necessary, and the estate will be responsible for the compensation of such additional attorney. *In re Evans' Estate,* 138 Wash. 101, 244 Pac. 260. Where the executor or trustee personally performs services, in their nature properly chargeable as expenses of the estate and in which he could have employed another, there is no good reason why he should not receive compensation for such services when performed. *In re Cornett's Estate,* 102 Wash. 254, 173 Pac. 44; *Kenney Presbyterian Home v. State,* 174 Wash. 19, 24 P. (2d) 403.

The authorities outside of this jurisdiction are in conflict upon this question, some courts of last resort holding that an executor or trustee who is an attorney cannot recover for even necessary or extraordinary legal services rendered. Others, and they appear to be in the majority, hold that an attorney who is a

trustee or executor, if he performs extraordinary services, legal in their nature, is entitled to compensation therefor. It is unnecessary to review these outside holdings, because this court, in the cases already cited, has substantially and in effect adopted the rule that an attorney, even though a trustee or executor, may recover for necessary or extraordinary legal services performed by him.

That the services, performed largely by Ira Bronson, of the firm named, during his lifetime, and continued by the surviving members of the firm, came within the rule of necessary or extraordinary services, there can be no doubt. Here was an estate of more than a million dollars, and there were many transactions, especially those with reference to the inheritance taxes, Federal and state, that required legal skill and ability. For such services, it cannot be said that the mere provision in the will for five per cent of an income over fifteen thousand dollars was intended to cover such expenses. For his services as an executor during his lifetime, Ira Bronson received less than three thousand dollars. The period of service extended from the time of Charles E. Peabody's death in 1926 until the latter part of the year 1930. For the services covered by this period, even if there were no contract, as shown by the evidence in this case, the charge would be very moderate.

It is next contended that the right of the respondents to recover was barred by the statute of limitations. The action was based upon an oral contract, and under Rem. Rev. Stat., § 159 [P. C. § 8166], would be barred in three years. Under the evidence in this case, the surviving members of the firm of Bronson, Jones & Bronson continued to act as attorneys until the latter part of the year 1930, when the dispute arose as to whether the estate could be closed.

This was when the right to bring an action accrued. The complaint was filed in the clerk's office June 1, 1933, which was well within the three-year period.

It is next contended that the services which were contemplated by the contract have not been completed. This depends upon whether the probate of the estate was ready for a final accounting and distribution. It is true that the executors named in the will were trustees, and as such it was intended that they should carry on until after the death of Mrs. Peabody, who, as has been stated, had a life estate in her husband's one-half of the community property. In § 92 of chapter 156, Laws of 1917, p. 666, which is one of the sections of the probate code, it is provided that, in the case of a nonintervention will, when the estate is ready to be closed, the court, upon application, shall have the authority to make and cause to be entered

" . . . a decree finding and adjudging that all debts have been paid, finding and adjudging also the heirs and those entitled to take under the will, and distributing the property to the persons entitled to the same, . . ." Rem. Rev. Stat., § 1462 [P. C. § 9967].

Referring to that statute in *In re Cornett's Estate,* 102 Wash. 254, 173 Pac. 44, it was said:

"The obvious purpose of the provision for final decree in the act of 1917 is to make a record title of the estate distributed, a thing beneficial to all concerned and not inimical to the powers of the executor or trustee to carry out the trust created by the will."

It was the function of the executors to collect the assets, pay the debts of the decedent and other necessary expenses, and distribute the residue in accordance with the will. *O'Neile v. Ternes,* 32 Wash. 528, 73 Pac. 692; *In re Acken's Estate,* 144 Iowa 519, 123 N. W. 187, Ann. Cas. 1912A, 1166. This would in no way interfere with their continuous performance of

158

their duties as trustees of the estate. If this is not true, then Mrs. Peabody would be deprived of her right to have her one-half of the community property distributed to her within her lifetime, because upon the death of Mr. Peabody the title to the personal property descended to the executors, and the community interest of the wife came under the probate proceeding. We see no reason why the estate, so far as the duties of the executors were concerned, was not complete and the estate ready for distribution in the latter part of the year 1930.

It is next contended that the appellants were entitled to a credit or offset in the sum of four thousand dollars. This was money paid by the executors to the firm of Bronson, Jones & Bronson early in the course of the administration without a claim having been filed. The four thousand dollars was paid for services rendered Mr. Peabody during his lifetime in connection with certain litigation which it is not here necessary to go into. There is no question about the value of the services, or that they were rendered. The only question is whether, the sum having been paid without the presentation of a claim, it can now be used as a credit or offset against the demand of the respondents. There is no question that, had the money not been paid, and the respondents were now seeking to recover it without having presented a claim, they could not prevail. *Butterworth v. Bredemeyer,* 89 Wash. 677, 155 Pac. 152; *In re Parkes' Estate,* 105 Wash. 586, 178 Pac. 830. That, however, is not the situation. The service was rendered and the money paid, and, under the circumstances surrounding it, the disposition of the question is controlled by the case of *In re Johnston's Estate,* 107 Wash. 25, 181 Pac. 209, where it was held that an administrator would not be held personally responsible for funds paid out of the

estate without a claim where such disposition was approved by the court in the order approving the final report and the estate was in no wise prejudiced thereby.

There are some other contentions in the briefs which have not here been specifically mentioned, but which we have considered and found to be without merit. To undertake to cover all of these contentions would extend this opinion, already too long, to an unreasonable length.

The judgment will be affirmed.

BEALS, TOLMAN, and GERAGHTY, JJ., concur.

