[No. 30017.  *En Banc.*  March 24, 1947.]

*In the Matter of the Estate of* AUGUST W. WIND, *Deceased.*
ALFRED HENDRICKSON, *Appellant,* v. SAIMA WIND, *as
Administratrix, Respondent.*[1]

[1]Reported in 178 P. (2d) 731.

*W. A. Ackerman,* for appellant.

*Warner Poyhonen* and *Lester Stritmatter,* for respondent.

SIMPSON, J.—January 31, 1946, Alfred Hendrickson filed two petitions attacking the probate proceedings of the estate of August Wind in the superior court of Pacific county. The first petition alleged that Saima Wind, surviving widow, had been appointed administratrix of her husband's estate, but that, just before the time of his death, August Wind had disposed of his property by will. The petitioner then offered to prove the will and have it admitted to probate. In his second petition, Mr. Hendrickson moved to have vacated a certain judgment of the court which had set off to Saima Wind property in lieu of homestead.

The cause, tried to the court, resulted in the entry of a judgment to the effect that August Wind had made his will January 10, 1945, but that, shortly before his death, February 13, 1945, the will was destroyed at the request of the testator. The judgment also contains the statement that the court refused "to consider any other issue until the purported will is established or its establishment denied."

The petitioner, Alfred Hendrickson, has appealed to this

court. His assignments of error attack the action of the trial court in the admission of evidence, in its refusal to determine the issue presented by the second petition, and in the entry of judgment denying probate of the will.

The evidence essential to a determination of the questions involved may be summarized as follows: August and Saima Wind, both past fifty years of age at the time of their marriage seven years before his death, engaged in three suits for divorce, in none of which was a final decree entered. The interlocutory order in the last divorce action was entered January 10, 1945. They lived in a hotel which was the separate property of Mr. Wind.

It is admitted that Wind properly executed his will in the presence of two witnesses January 10, 1945, and that it remained in his possession thereafter. The will read as follows:

"Raymond, Wash Jan 10, 1945
"August Wind hereby wills all his possessions, property and personal to Alfred Hendrickson to hold for his brother in Finland, Kalle Winni.

"August Wind

"Witnesses
"O. R. Nevitt
"Walter Boock
"Hugo Hogstrom"

August Wind died February 13, 1945, and, on the same day, his widow petitioned the court to be appointed administratrix of his estate. The court granted her petition February 28, 1945. She was also granted a family allowance out of the estate, and property in lieu of homestead was set over to her. Mrs. Wind testified that, about January 11, 1945, her husband handed her his will, which had been executed on the previous day, and asked her to burn it, and that she had complied with his request. The witness was permitted to testify concerning many statements made by her husband during his last days to the effect that he wanted her to return and remain with him. Another witness corroborated Mrs. Wind's testimony relative to the destruction of the will by saying that she heard Mrs. Wind say in the hearing of

Mr. Wind that he had given her his will and told her to burn it.

We are first met with a motion to dismiss the appeal. The ground for dismissal is that Alfred Hendrickson, on November 3, 1945, resigned as executor of the last will and testament of decedent, August W. Wind. The resignation referred to reads in part as follows: "I hereby resign as executor of the last will and testament of said decedent, August Wind."

■ The purported resignation, dated November 3, 1945, was not admitted in evidence, but is included in the transcript. Upon the record thus made, we are unable to consider the motion to dismiss. If respondent had desired to avail herself of the resignation, she should have offered proof thereon and presented the document in evidence.

■ It is a fact, as demonstrated by the evidence, that the petition to probate the will was filed a considerable time after the purported resignation, and that the respondent answered without presenting the question of appellant's resignation. She therefore waived her right to object and admitted the appellant's capacity to maintain his action. *Mutual Reserve Ass'n v. Zeran,* 152 Wash. 342, 277 Pac. 984.

The motion to dismiss the appeal is denied.

The judgment in this cause must be reversed upon two grounds: first, because the evidence was not sufficient to prove that the will was revoked by its destruction; and, second, that the evidence relating to its destruction was inadmissible. For the purpose of being definite, we set out the statements of Mrs. Wind concerning the destruction of the will as given by her on the witness stand:

"Q. Did you see the writing written by Dr. Nevitt that has been referred do as Gus' will? A. Yes. Q. When did you see it first? A. I seen it 11th day, morning. Q. The morning of the 11th? A. Yes. Q. What month? A. That is January. Q. What year? A. 1945. Q. Where did you see it? A. In the apartment. Q. Is that the Wind hotel? A. Yes. Q. In Raymond? A. Yes. Q. Where was it when you first saw it? A. In his pocket-book, bill fold. Q. How did you happen to see it? A. Well he gave it to me.

"Petitioner objects under both statutes and moves to strike the answer. The Court: I think the objection will be,

sustained presently, and exception allowed. Of course the court will change his ruling if you can convince him. Mr. Poyhonen: Q. You testified that Mr. Wind gave it to you? A. Sure. Q. Was that on the morning of the 11th of January? A. Yes. Q. About what time? A. That is about half past six oclock or seven oclock. Q. In the morning? A. Yes. Q. Did he hand it to you? A. Sure. . . . Q. What if anything did you do with the paper [will] that you had in your hand at that time? Petitioner renews last objection. Same ruling. Objection noted. Q. Don't say what he did, what did you then do with it if anything? A. I burned it. Q. Where did you burn it? The Court: I thought that was in the offer of proof. Mr. Ackerman: Yes it was. The Court: If it was the objection will be sustained. The court is willing to change the ruling if you convince me otherwise. Exception noted. Mr. Poyhonen: Q. Was anyone beside you and Gus Wind there at that time? A. No."

The court's finding on this phase of the case is as follows:

"That said will was delivered by the maker in his lifetime to Saima Wind, his wife, with directions to destroy the same; that the said Saima Wind destroyed said will in the family apartment [and] lifetime of August Wind, at his request and that the same was destroyed by burning in the lifetime of the decedent, and that there was not a will extant at the time of the death of August Wind."

Rem. Rev. Stat., § 1398 [P.P.C. § 219-9], relating to the revocation of wills, provides:

"No will in writing, except in cases hereinafter mentioned, nor any part thereof, shall be revoked except by a subsequent will in writing, or by burning, canceling, tearing, or obliterating the same, by the testator or testatrix, or in his or her presence, by his or her consent or direction."

██ It will be noted that the evidence given by Mrs. Wind did not indicate in any way that her husband's will was destroyed in his presence. The mandatory provisions of the statute just set out require that before it can be held that a will has been revoked by burning, it must be proved by competent evidence that the burning was done *at the testator's request and in his presence.* We must hold that the evidence was not sufficient to prove a legal revocation of the will made by Mr. Wind. Neither is the court's finding

sufficient upon which to base a judgment that the will was destroyed according to the provisions of law relating to the revocation of wills. The evidence was sufficient to prove that the will was properly and legally executed; and that it was never revoked by Mr. Wind, but was fraudulently destroyed by Mrs. Wind. It was fraudulently destroyed because the destruction was unlawful and done to further the financial interests of respondent. We hold that the evidence was sufficient to prove a will, and that it must be admitted to probate.

In this case, we have a proceeding initiated by the legal representative of August Wind, a deceased person, to have proved the destroyed will of Mr. Wind. Mrs. Wind was not merely a witness, but was also personally and financially interested in seeing to it that the will be invalidated. While the action was a contest over a will, the purpose of the proceeding was to defeat the title of Mrs. Wind, and thereby have the property of the estate given to Kalle Winni.

■ A transaction within the purview of Rem. Rev. Stat., § 1211 [P.P.C. § 38-3], means the doing or performing of some business between parties, or the management of any affair. To be a transaction in such a case, the matter concerning which the testimony is given must involve some act by and between the parties for the benefit or detriment of one or both of the parties. It has been held, and properly so, that the test of transactions with deceased within a statute excluding testimony concerning transactions with deceased, is whether deceased, if living, could contradict the witness of his own knowledge. *Bankers' Trust Co. v. Bank of Rockville Center Trust Co.*, 114 N. J. Eq. 391, 168 Atl. 733, 89 A. L. R. 697; *Bruen v. Spannhake*, 118 N. J. Eq. 134, 178 Atl. 73.

See, also, *Seligman v. Hammond*, 205 Wis. 199, 236 N. W. 115, and *Dominguez v. Garcia*, 36 S. W. (2d) (Tex. Civ. App.) 299.

■ It is apparent that the acts testified to by Mrs. Wind amounted to a transaction with her husband.

We have concluded after a thorough study of the question that the evidence in this case, supplied by Mrs. Wind,

relative to the purported statement made by her husband which instructed her to burn the will, was incompetent in that it violates the provisions of Rem. Rev. Stat., § 1211, which reads in part:

"No person offered as a witness shall be excluded from giving evidence by reason of his interest in the event of the action, as a party thereto or otherwise, but such interest may be shown to affect his credibility: Provided, however, that in an action or *proceeding* where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person, or as the guardian or conservator of the estate of any insane person, or of any minor under the age of fourteen (14) years, then a party in interest or to the record, shall not be admitted to testify in his own behalf as to any *transaction* had by him with, or any *statement made to him, or in his presence, by any such deceased or insane* person, . . ." (Italics ours.)

In all of our cases, except the ones presently to be mentioned, we have strictly applied the rule contained in the statute. Our reasoning has been that the statute is binding and precludes the giving of evidence when the lips of one of the parties have been closed by death. It has been held in the following cases that the exclusion rule, Rem. Rev. Stat., § 1211, does not apply either to will contests or applications for probate of a will in those cases. *In re Anderson's Estate*, 114 Wash. 591, 195 Pac. 994; *In re Zelinsky's Estate*, 130 Wash. 165, 227 Pac. 507; *Jones v. Peabody*, 182 Wash. 148, 45 P. (2d) 915, 100 A. L. R. 64; and *In re Findley's Estate*, 199 Wash. 669, 93 P. (2d) 318.

In the first case (*In re Anderson's Estate*), we very properly held that the evidence relative to the witness's knowledge of the mental condition of the testator was admissible for the reason that the mental condition of an individual could not be termed a transaction with one since deceased.

The *Zelinsky* case involved the contest of a will based upon the sole ground of undue influence. The trial court sustained objections to questions asked of the contestant relative to transactions between himself and the testator. Later, however, the question was opened up by cross-exam-

ination, thereby waiving the provisions of the statute. During the course of the opinion, this court took occasion to mention the *Anderson* case as holding that the statute, § 1211, did not apply to proceedings in probate or contest of will. The statement was *dicta* because it was not necessary to a decision in the case, the reason being that the proponent of the will waived the statute by his cross-examination.

Action in the *Jones* case was instituted for the purpose of recovering an attorney's fee. In passing upon the question involved, this court cited the *Anderson* and *Zelinsky* cases to the effect that the statute, § 1211, did not apply to proceedings for the probate or contest of a will. Clearly, the statement was merely voluntary, and not in any way necessary to a decision in the case.

The *Findley* case involved the contest of a will, and, in that case, we held that the statute, § 1211, did not apply to proceedings relating to the probate or contest of a will. In so doing, we based our opinion on our holding in the *Anderson*, *Zelinsky*, and *Jones* cases, and upon the cases cited in Ann. Cas. 1914A, 982, together with the rules laid down in 28 R. C. L. 510-512, and 5 Nichols Applied Evidence 4467, § 42.

In passing, we gave as the reason for not applying the statute that it was only passed to protect the estate against false and fraudulent claims, and that the proceeding was not an action wherein an adverse party sues or defends as executor, administrator, or legal representative of a deceased person.

An examination of the cases cited in Ann. Cas. 1914A, 982, proves that many of them were not in point, and others had to do with the interpretation of a statute unlike our own § 1211.

It is quite evident that our own cases cited in the *Findley* case were not in point, because none of them related to proceedings to probate or contest a will, in which transactions with a person since deceased were concerned.

After a thorough consideration of the statute and several cases, which we will cite later, we have concluded that Rem. Rev. Stat., § 1211, applies to proceedings to pro-

bate or contest of will in which an interested party seeks to testify to any transaction had with, or any statement made by, or in the presence of any deceased or insane person. The language of the statute was evidently adopted after consideration, and with the purpose of effecting a dual, definite objective—first, the prevention of allowing one to enrich himself by testifying to facts which in the very nature of things could not be denied; and, second, to protect the estate against false and fraudulent claims. To follow the rule that the statute under consideration does not apply to proceedings to probate a will, or to contest a will, would be to refute the clearly and plainly expressed intention of the legislature, that no one should be allowed to take advantage of a situation brought about by death, and thereby defeat the intention of the testator. There can be no difference between securing the allowance of a claim against an estate by testifying to a transaction with the deceased, and defeating the probate of a will, by testifying to transactions such as testified to in this case. In each case, the witness stands to profit, not by the merits of his contention, but because his evidence cannot be denied.

Some of the cases lending support to our present holding are: *Rich v. Bowker,* 25 Kan. 7; *Waugh v. Moan,* 200 Ill. 298, 65 N. E. 713; *Bardell v. Brady,* 172 Ill. 420, 50 N. E. 124; *Ford v. Donahue,* 95 Colo. 250, 35 P. (2d) 850; *Eder v. Methodist Episcopal Church,* 94 Colo. 173, 29 P. (2d) 631; *In re Van Houten's Will,* 147 Iowa 725, 124 N. W. 886, 140 Am. St. 340; *In re Wiltsey's Will,* 122 Iowa 423, 98 N. W. 294; *In re Atwood's Estate,* 14 Utah 1, 45 Pac. 1036, 60 Am. St. 878; *Wehe v. Mood,* 68 Kan. 373, 75 Pac. 476; and *In re Shapter's Estate,* 35 Colo. 578, 85 Pac. 688, 117 Am. St. 216, 6 L. R. A. (N.S.) 575.

The *Findley* case, in so far as its holdings are inconsistent with our conclusion in the present case, is overruled.

The judgment of the trial court is reversed.

ALL CONCUR.

---

April 14, 1947. Petition for rehearing denied.