[No. 38131.   Department Two.   September 8, 1966.]

*In the Matter of the Estate of* MAUDENE M. GARDNER, *Deceased.*

FAYE TYER, *Appellant,* v. G. EARL MILLER, *Respondent.**

*Reported in 417 P.2d 948.

*Raymond A. Reiser,* for appellant.

*Stanley N. Kasperson,* for respondent.

LANGENBACH, J.†—This is a proceeding to establish a destroyed will and its contents. Faye Tyer and Isaiah Goodall petitioned to admit to probate a destroyed will and appoint Isaiah Goodall as executor; or, alternatively, for a judgment awarding Faye Tyer damages against G. Earl Miller for his appropriation of decedent's assets and the destruction of

---

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

the will, thereby depriving her of a legacy. Mr. Miller petitioned for his appointment as administrator as the sole heir.

A pretrial order limited the issues to proof of the execution and contents of the destroyed will.[1] Thereafter, the probate court denied the petition of Faye Tyer on grounds that she had failed to sustain the burden of proof of the contents of the will and its due execution, "in that the witness who observed the decedent signing an instrument was unable to fix the time of the transaction, and the other witness could not fix the time and had no personal knowledge of the signing or acknowledgment of the instrument by either the deceased or the other witness."

The court appointed Mr. Miller as administrator, and Faye Tyer has appealed.

Maudene Gardner, a widow 75 years of age, died April 7, 1963. Sometime during the latter part of 1959, she prepared a will of three pages in her own handwriting. She had used another will as her guide. She showed the will to a man who was named therein as executor. He read the will to see that it conformed with the form of will he had furnished her. They then took it to the office of a savings and loan company and asked the secretary to witness her will. The deceased signed it in his presence; he signed it in her presence and then they took it to a teller's cage (20 to 35 feet away) where the teller signed as a witness. Neither of these witnesses read the will. The will was then placed in a long envelope, sealed and given to the named executor for safekeeping. He took it to his home.

---

[1]The material portions of the pretrial order provided: "This issue is: Under the proof submitted, should the destroyed will be admitted to probate.

"This pre-trial department strongly recommends that the trial judge hear the proof on this issue and decide it before deciding whether or not any other issues can be properly considered. If the destroyed will is admitted, then plainly it is up to the executor to decide whether or not it is worthwhile to bring a lawsuit against Mr. Miller for appropriating money improperly from the deceased.

"If the trial judge holds that the proof is insufficient to prove the contents of the destroyed will, then he should decide whether or not he can properly conduct a trial on any other issues."

Thereafter the decedent resided in a nursing and rest home until her death.

On December 30, 1962, decedent's nephew (respondent) went to the home of the named executor and told him that the deceased had requested him to get the will and destroy it. The executor delivered the will to respondent who took it to his home and gave it to his wife. She "scanned" the will looking for her own name. Failing to find her name, she gave it back to her husband who burned the will in the fireplace. The maker of the will was still alive at this time, but was not present. No proof was made or offered concerning the mental competency of the decedent at the time of the destruction of the will.

The named executor testified that he had read the will just before it was signed, and that it provided for a bequest of $500 to the University Christian Church, a bequest of $5 to respondent, the residue and remainder to appellant, and named him as executor with compensation.

Appellant called respondent's wife as the other witness to prove the contents of the destroyed will. She testified her husband had brought the will home and had given it to her; she "scanned" it, noticing respondent's name and either $5 or $50 opposite it; she noticed her son's name with a similar amount opposite it; a church was named, but she could not remember any specified amount; and she saw appellant's name and "personal effects." She did not state that she saw or identified the signatures, whether there was an attestation clause or the word "witness" on it. She then gave it to her husband who burned it in the fireplace. She had been examined prior to trial by deposition. In this she stated she saw her husband's name and an amount, it might have been $5 or $50. She saw the name of her son and the same amount. She saw the words "University Christian Church" but not the amount opposite it. "Q. Then the rest, residue and remainder to Mrs. Tyer [appellant]? A. I believe so."

Appellant argued that she had sustained her burden of proving the execution and contents of the destroyed will, or alternatively, the probate court had general jurisdiction to

award her damages in the event she failed to sustain her burden of proof. We do not have to consider appellant's latter contention, since we agree that she had sustained her burden of proving due execution and contents of the destroyed will.

Normally, proof of a will being destroyed prior to testatrix's death raises a rebuttable presumption of revocation. See, *In re Robinson's Estate,* 149 Wash. 307, 270 Pac. 1020 (1928); and *In re Harris' Estate,* 10 Wash. 555, 39 Pac. 148 (1895). In the case at bar, this presumption is rebutted by respondent's admission that he destroyed the will out of the presence of the testatrix in her lifetime. See, RCW 11.12.040.[2]

In *In re Wind's Estate,* 27 Wn.2d 421, 178 P.2d 731, 173 A.L.R. 1276 (1947), the court held that a will to be effectively revoked by burning under RCW 11.12.040, the burning must be done at the testator's request and in his presence. This does not mean, however, that the ineffective revocation ipso facto makes the will admissible to probate regardless of the lost wills act. *In re Kerckhof's Estate,* 13 Wn.2d 469, 125 P.2d 284 (1942).

The material provisions of the lost wills act, RCW 11.20-.070 are as follows:

> No will shall be allowed to be proved as a lost or destroyed will unless it is proved to have been in existence at the time of the death of the testator, or is shown to have been destroyed, canceled or mutilated in whole or in part as a result of actual or constructive fraud or in the course of an attempt to change the will in whole or in part, which attempt has failed, or as the result of a mistake of fact, nor unless its provisions are clearly and distinctly proved by at least two witnesses . . . .

Respondent's act of destroying the will under these circumstances was fraudulent within the statute. Where a will is destroyed without the knowledge or consent of the

---

[2]RCW 11.12.040: "No will in writing, except in cases hereinafter mentioned, nor any part thereof, shall be revoked except by a subsequent will in writing, or by burning, canceling, tearing, or obliterating the same, by the testator or testatrix, or *in his or her presence, by his or her consent or direction.*" (Italics ours.)

testator or testatrix, it is fraudulent as to him or her. See, Annot. 23 A.L.R.2d 382. In *In re Wind's Estate, supra*, at 426, the court held that a will wrongfully burned within RCW 11.12.040, "was fraudulently destroyed because the destruction was unlawful and done to further the financial interests of respondent." In the case at bar, respondent without a doubt was to benefit financially from the destruction of the will. He was the sole heir within the intestacy statute.

In *In re Robinson's Estate,* 149 Wash. 307, 310, 270 Pac. 1020 (1928), the court held that where the decedent had a right of access, but not actual access to her will, and the custodian (being benefited by the lost or destroyed will) argued that he had given the will to her and she subsequently destroyed the same, the custodian had the burden of proving that decedent destroyed the will. The court held that he failed to sustain that burden and affirmed the trial court holding: " 'That the said will was in existence at the time of the death of . . . [testatrix] or if it was not in existence the same was fraudulently removed from her safety deposit box by . . . [the custodian] and wrongfully suppressed.' "

When the respondent went to the custodian of the will on December 30, 1962, he merely asked orally for the will for the purpose of destroying it. He tendered no signed statement or authorization from the testatrix to the custodian of the will for its surrender and delivery for eventual destruction. There was only the bare unsupported statement of respondent to that effect.

The net result of respondent's activities was to have the decedent die intestate and leave him as her sole heir. The respondent's wife lost all interest in the will when she did not see her name as a beneficiary therein. As his wife, she had a chance of benefiting with him from the proceeds of the estate. He was then the sole heir. No one will ever know whether the decedent told him to get the will and destroy it. Nor will it ever be known what was her mental status at that time. It is known that she died in a nursing home; that it had been bruited about that she needed a

guardian for her affairs. It was admitted by respondent that the will was in existence up until the time of its deliberate destruction by him. Its destruction was for the sole purpose of making the respondent the sole beneficiary of her estate.

In some jurisdictions where a will is fraudulently destroyed, the will is presumed to have been legally drawn and executed. See, *Preston v. Preston,* 149 Md. 498, 132 Atl. 55 (1926); and Annot. 41 A.L.R.2d 393. At this time, however, we need not determine the effect of respondent's fraudulent conduct, as we hold the evidence established that the will was duly and legally executed.

■ As the standard to establish the execution of a will destroyed by interested parties, respondent relied on a statement made in *In re Borrow,* 123 Wash. 128, 130, 212 Pac. 149 (1923):

> The law requires great care and exactness in the proof of a written will, even when the instrument itself is preserved and presented, and when the instrument is not presented, the least that can be required is that the evidence to establish its execution and contents must be clear and convincing.

The court, however, at 129, said: "we have no hesitancy in holding that appellant failed to establish that any will had ever, at any time, been made by the deceased." Moreover, in *In re Peters' Estate,* 43 Wn.2d 846, 860, 264 P.2d 1109 (1953), the court determined the standard to be as follows:

> In our opinion, the clear and distinct proof referred to in the lost wills statute (RCW 11.20.070) relates only to the provisions of the instrument, and not to its execution. Proof as to the execution of the instrument is dealt with in the first paragraph of that statute and in other statutes. RCW 11.20.020 . . . RCW 11.20.040 . . . .

■ In the case at bar, no one doubted that respondent destroyed the will. Further, the attesting witnesses testified as to the execution of the will. In *In re Harris' Estate, supra,* the court held that the execution of a lost will was sufficiently established where, in the absence of contradictory

testimony, one of the attesting witnesses testified he saw the testator and the other attesting witness (who subsequently died) sign the will. For similar cases in other jurisdictions see Annot. 41 A.L.R.2d 393, 411 (1955). Respondent, however, argued that one of the signing witnesses did not witness the signing of decedent nor of the other witness. This argument was answered in *In re Chambers' Estate*, 187 Wash. 417, 425, 60 P.2d 41 (1936):

> Our statute governing the execution of wills has reduced the formalities in connection therewith to a minimum. The statute does not require  .  .  .  by its direct terms that the testator sign the will in the presence of the witnesses, or that the witnesses sign in the presence of each other. It does, however, require that the witnesses subscribe their names in the presence of the testator and at his direction or request. In the case at bar, the witnesses subscribed their names in the testator's presence.

In the absence of the will, the two witnesses to its attestation have testified that they knew the decedent as a customer of their office, and they had witnessed many wills. The secretary was positive that he had witnessed this will. The teller stated she had witnessed a will for decedent, but she differed as to the time of this act. In the absence of the will itself which would undoubtedly bear some date, it must be held to have been properly and legally executed. The trial court erred in holding that the appellant did not sustain her burden of proving due execution of the will.

The contents of the will need be clearly and distinctly proven by two witnesses who are not required to be the attesting witnesses to the will. *In re Peters' Estate, supra.* The two witnesses required by the statute must be able to testify to the provisions of the will from his or her own knowledge, and not from the declarations of another. *In re Calvin's Estate*, 188 Wash. 283, 289, 62 P.2d 461 (1936); and *In re Auritt's Estate*, 175 Wash. 303, 27 P.2d 713 (1933).

> [I]n establishing the terms and provisions of the will, it is not necessary that the witnesses testify to its exact language but only to the substantive provisions.
> The cases in this and other jurisdictions have used various terms as to the quantum of evidence needed to

establish the provisions of the will. (These cases are collected in an annotation at 126 A.L.R. 1141.) It is a matter of choosing between such terms describing the proof required as, "clear and satisfactory," "very clear and satisfactory," "strict and complete," proof "to a reasonable certainty," "direct, clear and convincing," "strong and conclusive"—and then distinguishing between the infinite degrees of those terms. There is also a line of cases to the effect that where a will has been destroyed after the death of the testator and that will is sought to be probated, and objections thereto are made by persons who appear to have connived in its destruction, only slight evidence of its contents is required. Anderson v. Irwin, 101 Ill 411. The court there said:

> " . . . the rule seems to be well settled that where one deliberately destroys or purposely induces another to destroy, a written instrument of any kind, and the contents of such instrument subsequently become a matter of judicial inquiry between the spoliator and an innocent party, the latter will not be required to make strict proof of the contents. . . ."

Indeed, in the case of Jones v. Casler, 139 Ind 382, 38 NE 812, the court seemed to question whether one who had destroyed a will was entitled to contest its probate. The facts in that case, however, indicated that the destruction was fraudulent.

Here, there is no suggestion that the burning of the will was fraudulent. *In re Gabriel's Estate*, 59 Ill. App.2d 388, 210 N.E.2d 597 (1965).

In the case at bar, respondent fraudulently destroyed the will prior to the testatrix's death, out of her presence. Not only was it so destroyed, but respondent benefited financially from such destruction. The testimony of the named executor (who had furnished the testatrix with a will form as a guide) and of the respondent's wife established the contents of the will—bequests to respondent and his son and to the University Christian Church and the rest, residue and remainder to appellant and naming an executor. Under the facts and circumstances in this case, appellant has sustained her burden of proof.

The judgment is reversed with directions to admit such

will to probate and to distribute the decedent's estate according to its provisions. It is so ordered.

ROSELLINI, C. J., DONWORTH, FINLEY, and WEAVER, JJ., concur.

November 10, 1966. Petition for rehearing denied.