Stacy BALL, Individually and as Executrix of the Estate of L. H. BALL, Deceased, Appellant,

v.

Ike PARKS et al., Appellees.

No. 15590.

Court of Civil Appeals of Texas.

Fort Worth.

March 18, 1955.

Rehearing Denied April 29, 1955.

Smoot & Smoot and George A. Smoot, Wichita Falls, for appellant.

Donald & Donald and J. M. Donald, Bowie, for appellees Ike Parks and S. H. Overstreet.

H. M. Muse, Wichita Falls, for appellee, Mrs. Juanita Willingham.

BOYD, Justice.

Ike Parks and S. H. Overstreet filed this suit against L. H. Ball and wife, Stacy Ball, and T. R. Willingham, for specific performance of a written contract to convey land, and also prayed for title and possession of the land. Before the trial, Willingham died testate and his widow, Juanita Willingham, individually and as executrix of his estate, was made a party defendant.

Parks and Overstreet alleged that on and prior to February 24, 1948, the Balls and T. R. Willingham were claiming to be joint owners of a tract of land described as "80 acres, more or less, being a part of Block 78, Hill County School Land, Montague County, Texas," the petition setting out metes and bounds; that the Balls authorized Willingham to make sale of said land and to execute a contract in their name when a purchaser was procured therefor; that Overstreet, acting for himself and Parks, contacted Willingham and agreed to buy the land for $2,000; that a contract of sale and purchase was prepared and signed by Overstreet and by L. H. Ball, by and through T. R. Willingham as agent; that Overstreet paid $200 to Willingham in cash, and it was agreed that the balance was to be paid when an abstract was furnished and title accepted; that Parks and Overstreet went into immediate possession of the land, made valuable improvements in good faith, and are still in possession of it; that they had diligently sought to obtain from the Balls and Willingham an abstract showing merchantable title to the land, and were ready and willing to pay the balance of the purchase price; that the Balls were estopped to deny Willingham was a joint owner, or that he was acting as their agent; that L. H. Ball knew that Parks and Overstreet were in possession of the land and were making valuable improvements thereon. They tendered the balance of the purchase price, to-wit, $1,800, into court.

Mrs. Willingham, individually and as independent executrix of the estate of her husband, alleged that she and T. R. Willingham owned the fee simple title to the land on and prior to February 24, 1948; that they purchased the land from J. R. Nations, paying therefor $1,000 in cash and executing five $100 vendor's lien notes; that Nations transferred the notes to J. E. Walthall; that fearing Walthall would insist upon payment of the notes at maturity, they sought a loan from the Balls to pay Walthall; that they were told that a mortgage on the land would be invalid; that the Balls agreed to advance the money to pay the notes and take a warranty deed to the land as security for the advancement, and that, when they were repaid, they would deed the land to the Willinghams or to anyone to whom they might sell it. She sought recovery of the $1,800 tendered into court.

The Balls under oath denied the execution of the alleged sales contract; denied that T. R. Willingham or any other person was authorized to execute such contract for them; alleged that they were the owners of the land; denied that it was the intention of the parties that the deed from the Willinghams to them, dated January 19, 1937, should be regarded as a mortgage; alleged that if for any reason such deed should be held insufficient to convey title, then it was regularly conveyed to them by another deed executed by the Willinghams on May 20, 1943, for a valuable consideration, purporting to vest and vesting all right, title and interest of the Willing-

hams in the Balls; and alleged that the Willinghams were estopped from claiming any interest in the land or in any funds growing out of any pretended sale thereof. They filed a cross-action against Mrs. Willingham, individually and as executrix.

The first deed executed by the Willinghams to the Balls was acknowledged on January 19, 1937, and filed for record on February 9, 1937. It describes the property as being "75 acres, the same being a part of the S.W. part of Block No. 78, Hill County School Land, in Montague County, Texas," and gives metes and bounds, and then recites that the property conveyed is "75 acres off of the S.E. part of a 90 acre tract in Block No. 78 formerly owned by R. Allred."

A carbon copy of the alleged sales contract offered in evidence by Parks and Overstreet, dated February 24, 1948, described the land as "Lying and situated in Montague County Being Block 78 Hill County School Land." At the bottom of the contract is the following:

"This contract subject to the acceptance of Seller

"Accepted.

"———————————— (s) L. H. Ball ————————————
           Seller.
                              Agent for ————————

"————————————
   Purchaser.   (s) By T. R. Willingham"

The jury found that it was the intention of the Balls and the Willinghams that the instrument in the form of a warranty deed from the Willinghams to the Balls should operate as a mortgage as security for funds borrowed by the Willinghams from the Balls; that L. H. Ball authorized T. R. Willingham to make a sale of the land; that L. H. Ball authorized his name to be signed by T. R. Willingham to any contract of sale of the land; and that L. H. Ball's name was signed to the contract by T. R. Willingham or under his direction.

Judgment was rendered for Parks and Overstreet for title and possession of the land, and for Mrs. Willingham for the balance of the purchase money. After the trial, L. H. Ball died testate, and his widow, Stacy Ball, individually and as executrix of his estate, prosecutes this appeal.

Appellant assigns twenty-two points of error; however, in the view we take of the case, it will not be necessary to notice all of them. Several points relate to the action of the court in permitting Mrs. Willingham and appellee Overstreet to testify to transactions with and statements by the deceased, T. R. Willingham. The testimony complained of was material, and was the only evidence supporting some of the crucial findings of the jury; therefore, if appellant's attack on it is valid, the cause must be reversed. Although the question is not free from difficulty, we are of the opinion that the objections to such testimony should have been sustained.

T. R. Willingham died on August 26, 1949. His will was admitted to probate on September 12, 1949, and on that date Mrs. Willingham qualified as independent executrix. All the property of deceased was devised to her.

Article 3716, R.C.S., provides: "In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

Mrs. Willingham testified that at the time she and her husband executed the instrument in the form of a warranty deed to the Balls, it was agreed by all parties that the deed should operate as a mortgage to secure an advancement by the Balls of the money to pay the notes held by Walthall; that T. R. Willingham said "it was necessary to make the deed, because we could not give a lien on our homestead," and that they delivered the deed upon the agreement of the Balls to deed it back to them or to anyone

to whom they might sell it; that she and deceased used the money they received from the Balls to pay the notes held by Walthall; that the Balls, the deceased, and the witness wrote an advertisement offering the land for sale and had it published in a newspaper, which referred those interested to T. R. Willingham; that Overstreet came to their home and, on behalf of himself and Parks, offered T. R. Willingham $2,000 for the land; that T. R. Willingham offered to sell the land to Overstreet and Parks for $2,000, with $200 to be paid in cash and the balance to be paid when an abstract showing merchantable title had been furnished; that she, at her husband's request, wrote the contract and signed his name and L. H. Ball's name to it; that Overstreet paid $200 by giving his check for that amount to T. R. Willingham; that deceased wrote part of a letter to the person in possession of the land, ordering him to deliver possession to Parks and Overstreet, and that, at his direction, she finished writing the letter, which was given to Overstreet; that she and deceased were occupying the land as their homestead at the time they made the deed to the Balls, and continued to occupy it for several years thereafter; that they controlled the land after that deed was made, and retained control of it after they removed from the premises; that they arranged the deals whereby the Balls deeded the land to Morgan, and Morgan deeded it to the Balls; that when Morgan bought it, the Willinghams held his notes for the unpaid purchase price; that they rented the land to other persons before and after Morgan bought it; that T. R. Willingham negotiated the oil and gas lease to the Texas Company, which was executed by the Balls; that the Texas Company paid $800 for the lease, and that the Willinghams gave Mrs. Ball $600 of it and kept $200.

Overstreet testified that in 1941, after the Willinghams made the deed to the Balls, and several years before he and Parks tried to buy the land, deceased authorized him to move on the tract; that he lived there for a few months; that in February, 1948, he saw the advertisement offering the tract for sale, and went to the Willingham home and discussed with deceased the matter of buying it; that he offered deceased $2,000 and deceased finally agreed to accept it; that deceased started to write the contract and at Willingham's direction his wife finished writing it; that witness signed the contract; that he paid deceased $200 by check and deceased endorsed the check.

During the trial, Parks and Overstreet moved to dismiss as to Mrs. Willingham as executrix. They also waived the abstract of title.

At the time of the trial, more than four years had elapsed since Mrs. Willingham qualified as executrix; no claims against the estate had been presented to her; she testified that she did not know of any debts owing by the estate; she owned some interest in the land in her own right, and all of it, subject to any valid debts, as sole devisee. Such being the case, appellees contend that this is not a suit by or against an executrix, and that she and Overstreet were competent to testify to transactions with and statements by the deceased.

It appears that two notes were executed by the deceased which have not been paid. One is for $300 and matured April 2, 1949; the other is for $519.84, payable in monthly installments of $43.50 each, beginning on December 2, 1948. No suit has been filed on either claim, but both were filed with the County Clerk.

We agree with appellees that filing these claims with the Clerk is of no importance; but we are of the opinion that it is not necessary to file a claim with an independent executrix. Smyth v. Caswell, 65 Tex. 379; Parks v. Lubbock, Tex.Civ.App., 50 S.W. 466; Taylor v. Davidson, Tex. Civ.App., 120 S.W. 1018; Sloan v. Dahl, Tex.Civ.App., 27 S.W.2d 284; Lessing v. Russek, Tex.Civ.App., 234 S.W.2d 891.

Appellees insist that said claims are barred by limitation because they both matured more than four years before the trial of the case. But there is another fact which we think bears on the question as to whether the claims are barred. Mrs. Wil-

lingham left Texas on September 10, 1952, and since that time has been in California.

Article 5537, R.C.S., is as follows.: "If any person against whom there shall be cause of action shall be without the limits of this State at the time of the accruing of such action, or at any time during which the same might have been maintained, the person entitled to such action shall be at liberty to bring the same against such person after his return to the State and the time of such person's absence shall not be accounted or taken as part of the time limited by any provision of this title."

We have seen no authority exactly in point as to whether such absence of the executrix tolls the statute of limitation. In Cotton v. Jones, 37 Tex. 34, it was held that absence from the state of an executor, after a claim had been presented and rejected, did not prevent the barring of the claim if suit was not filed thereon in ninety days. The court said that the provision of the statute that suit must be filed on rejected claims within ninety days is not a statute of limitation, but that the claim is barred if the next step after rejection is not taken in ninety days. However, the court said: "Had the claim not been rejected, then the law as well as the reason for the law governing the prosecution and collection of the same, would have been quite different."

In Robin v. Ely & Walker Dry Goods Co., Tex.Civ.App., 137 S.W.2d 164, 167, writ refused, the court said: "The statute is plain and unambiguous, and has no saving clause as to any sort or character of absence of the defendant which would toll the running of the statute of limitation as to him during his absence from the State; and the courts are not authorized to read into the statute any sort or character of absence of the defendant as would not toll the running of the statute during his absence from the State."

In Gibson v. Nadel, 5 Cir., 164 F.2d 970, 971, it was shown that the defendants had an agent in Texas upon whom service of process could be had, and was had, but the defendants absented themselves from the State during part of the statutory period of limitation. The court said: "The invoked statute enacted in 1841 was early construed as a statute enacted to protect domestic creditors 'from the inconvenience and loss they would be exposed to by the absence of their debtors and consequent immunity of the latter from process and judgment.' It has been and is consistently held that it should be given a construction to effect that dominant purpose and that it should be applied as written without addition to or subtraction from it. This construction, that it is the absence of the debtor from the state that determines the effect of Art. 5537, has been maintained against efforts to limit application of the statute to suits and claims against persons who are citizens and residents of Texas, the courts holding that the statute was equally applicable to a defendant, though a non-resident, who was actually in the state at the time the obligation sued on was incurred or had its inception. It has been equally maintained, as applicable against claims of the kind asserted and allowed to prevail here that the fact that service could be obtained by attachment and by substituted process upon an agent or tenant rendered the statute inapplicable." To the general effect that it is the absence of the defendant from the state and not the character of the action against him, or the fact that service may be had during his absence, which controls the operation of the statute, see Huff v. Crawford, 88 Tex. 368, 30 S.W. 546, 31 S.W. 614, 53 Am.St.Rep. 763; Wilson v. Daggett, 88 Tex. 375, 31 S.W. 618, 53 Am.St. Rep. 766.

"* * * according to the great weight of authority, provisions suspending the operation of the statute of limitations during the absence or nonresidence of the defendant are applicable although the relief sought might have been obtained during such absence or nonresidence against property which he had within the state, * * *." 34 Am.Jur., p. 180, sec. 223. See also 119 A.L.R. at page 337 et seq.

"Whether any modification should be made of this provision under certain circumstances, as, for instance, where the party leaves property subject to attachment, is left to the wisdom of the Legislature. There is no exception in the words of the law, and we are not authorized to admit of any not provided for or intended by the legislative authority; * * *." Ayres v. Henderson, 9 Tex. 539.

We are of the opinion that the claims against the estate were not barred by the four year statute of limitation, Vernon's Ann.Civ.St. art. 5529; that Mrs. Willingham is still executrix, holding the estate for the benefit of creditors; that this is a suit against and by her as such executrix; and that Article 3716 prohibits any party to the suit from testifying as to transactions with or statements by the testator.

It is true that Mrs. Willingham owned an interest in the land in her own right. But that interest and her interest as executrix are not severable, and Article 3716 applies. Spencer v. Schell, 107 Tex. 44, 173 S.W. 867; Fuston v. Wilson, 144 Tex. 588, 192 S.W.2d 444; McKibban v. Scott, 131 Tex. 182, 114 S.W.2d 213, 115 A.L.R. 1421; Graves v. Moon, Tex.Civ.App., 92 S.W.2d 290; Eastland v. Basey, Tex.Civ.App., 196 S.W.2d 336.

Appellees Parks and Overstreet further urge that Mrs. Willingham was called by them as an adverse party, which is allowed by the Article. We do not determine whether she was in fact adverse to them. If so, and if thereby her testimony was rendered admissible for appellees, it was not admissible against the Balls. Their right to object could not be waived by other parties to the suit. Firestone v. Sims, Tex.Civ.App., 174 S.W.2d 279, writ refused; 70 C.J., p. 363, sec. 479.

In view of another trial, the opinion is here expressed that the Balls' requested issue No. 1 should have been submitted. It inquired whether the Willinghams accepted $100 in cash, the payment by the Balls of a $200 note, and the deed to a half interest in certain lots as consideration for the quitclaim to the Balls of their interest in the land. We think the evidence relating to the deed of May 20, 1943, raised this issue.

We do not extend this opinion to consider the other assignments, since the matters complained of may not arise in the same form on another trial.

The judgment is reversed and the cause remanded.