[No. 34220.   Department Two.   October 17, 1957.]

JACOB N. BEPPLE, *Appellant*, v. SIGMUND G. REIMAN *et al.*,
*Respondents.*[1]

*Kern, Dano & Cone,* for appellant.

*William H. Mullen,* for respondents.

DONWORTH, J.—This action was commenced by appellant for the purpose of establishing ownership of certain land which he claimed by reason of adverse possession. The cause was tried to the court, which entered judgment dismissing appellant's complaint.

The facts may be summarized as follows:

For several years prior to 1928, Sigmund Reiman (hereinafter referred to as if he were the sole respondent) owned a tract of land in Grant county. This tract was intersected by the west boundary of the city of Quincy. The easterly portion, located within the corporate limits, was platted property, whereas the remaining (westerly) portion was unplatted farm land located outside the corporate limits. For convenience, we shall hereinafter refer to the platted property as tract I and to the adjoining portion of the unplatted property as tract II. The remaining unplatted property, abutting tract II on the west, consisted of approximately one hundred acres of farm land.

[1] Reported in 316 P. (2d) 452.

Prior to 1928, tracts I and II were surrounded by a common fence, forming a single, quadrangular enclosure of pasture land. A house, situated on tract I, was occupied by appellant as a tenant of respondent for over two years prior to January, 1928. During the period of his tenancy, appellant occupied only the house, making no use of the surrounding pasture land. The farm land to the west of tract II was not cultivated during that period. A dilapidated barn was at that time situated on tract II.

In January, 1928, appellant agreed to buy, and respondent agreed to sell, certain land under the terms of an executory contract. The land described therein encompassed all of tract I except a contiguous strip of land, ten feet in width (platted as an alley), extending from the north to the south boundaries thereof. This transaction was consummated by mail, as respondent was then residing in Seattle. Pursuant to that contract, a warranty deed was executed and delivered by respondent to appellant in 1943, the deed containing the same legal description of the land as that described in the 1928 contract. In 1946, a warranty deed, making a correction in the legal description of the land intended to have been conveyed by the first deed (immaterial for the purpose of this opinion), was executed by respondent and delivered to appellant.

Appellant mistakenly believed that he had purchased all land within the fenced enclosure. However, his purchase contract and the deeds executed thereunder described only tract I, exclusive of the ten-foot alley. The land here in dispute consists of tract II (which is wholly within the fenced enclosure) and the alley.

Early in 1928, respondent orally leased to appellant the remainder of his land on a share-crop basis. Respondent could not recall whether the lease was agreed upon simultaneously with, or subsequent to, the purchase agreement. With reference to this sequence of events, appellant testified, on direct examination, in part, as follows:

"Q. When would you say it actually was, when you actually rented the farm land? A. Well, that deal was

partly made during,—right after I bought this house; this ground, and the house."

On cross-examination, appellant responded in the affirmative when asked, "The deals were made more or less simultaneously?"

Appellant commenced raising wheat on the land west of tract II in the spring of 1928, using the barn within the enclosure (tract II) for the maintenance of horses and storage of agricultural implements. Every second year thereafter appellant, through his grain depositary, paid to respondent, as rental, one fourth of the value of the wheat crop raised on the farm land.

Between 1928 and 1952, appellant constructed various improvements on tract II. Each of these improvements was used in conjunction with his cultivation of the leased farm land or incidental to his general farming operations. His aggregate investment in these improvements was estimated at about twelve hundred dollars, exclusive of his labor. The evidence fails to disclose whether or not appellant ever paid any taxes whatever on the land in dispute or the improvements thereon. During this period, respondent resided in Seattle but visited Quincy annually on Memorial Day. He seldom went to the farm site. He testified that he ignored it, but had noticed several of appellant's improvements from time to time and thought that they were constructed for appellant's own benefit.

In 1952, appellant first learned that, according to his deed, he was not the owner of the tract in dispute. Shortly thereafter, respondent advised him to remove his buildings therefrom. Appellant sought to purchase the disputed land, but the parties were unable to reach an agreement. In 1953, appellant ceased cultivating the farm land. In 1954, he removed the improvements which he had constructed on tract II. This action followed.

In substance, the trial court found that the purchase contract and the oral lease of the remaining land were executed simultaneously, and that appellant's occupancy of the land in dispute was as a tenant of respondent and not as one holding adversely to him.

Appellant challenges the sufficiency of the evidence to support certain findings of fact, the conclusions of law drawn therefrom, and the judgment of dismissal.

It is conceded by appellant that the judgment entered would be proper *if* respondent had shown the land in dispute to be included within the land orally leased. *Rogers v. Cation,* 9 Wn. (2d) 369, 115 P. (2d) 702 (1941). But appellant argues that there is no evidence whatever in the record showing that the disputed tract was a part of the land included in the lease; that appellant was entitled to the presumption that the character of his possession was adverse, arising because of his proof that his possession was open, notorious, continuous, and uninterrupted for the required time (*Hovila v. Bartek,* 48 Wn. (2d) 238, 292 P. (2d) 877 (1956); that, since the evidence failed to show the land in controversy to be a part of the land leased and respondent produced no evidence to rebut the presumption of adverse possession by showing appellant's possession to be permissive, therefore appellant should be entitled to prevail on the strength of the presumption that his possession was adverse to respondent.

Assuming, *arguendo,* that appellant is entitled, as claimed, to the presumption that his possession of the tract in dispute was adverse, we are unable to concur in his contention that such presumption was not rebutted by sufficient evidence.

The evidence shows that prior to 1928 respondent was the owner of a single tract of land (partly platted and partly unplatted); that, in 1928, the parties hereto entered into "simultaneous" agreements (accepting appellant's affirmative answer on cross-examination above referred to) by which a part of the land was purchased by appellant under the terms of a contract (in which the legal description of the land sold was definite and certain) and an indefinite quantity of the remainder of the tract was orally leased. The controversial tract II is located between the known quantity of land sold and the unknown quantity of farm land leased. While, as appellant contends, there is no *direct* testimony that the specific land in dispute was a part of the

land which appellant leased from respondent (because the lease was oral and, therefore, contained no legal description), it is equally true that the testimony failed to disclose that the land in dispute *was not* a part of the leased land, other than appellant's assertion that he thought he had purchased it.

A factual issue was presented for the determination of the trial court as to whether the tract in dispute was, or was not, a part of the land leased. If so, appellant's entry upon the land would have been permissive; otherwise it would have been adverse.

In considering this question, the trial court was obliged to determine the intention of the parties at the time of entering into their oral lease. Appellant at that time did not believe that the disputed tract was a part of the land leased, because he thought he had purchased it. On the other hand, respondent had sold (or was selling) a part of his land to appellant and was leasing all of the remainder. We think that the trial court was justified in concluding that respondent did not intend to withhold from the oral lease of one hundred acres of farm land a strip of land approximately 350 feet by 150 feet (upon which his barn was located) which was between the land sold and the land leased.

The trial judge, in his memorandum opinion, expressed his conclusion that the tract in dispute "went along with and was necessary to, the use and occupancy of the Wheatland, under the oral lease, because anyone renting the Wheatland had to have a place to keep the machinery and the horses." The court resolved the issue by finding that appellant's entry upon the land in dispute was under the terms of the oral lease. We hold that the evidence upon which that finding of fact was based is sufficient.

Referring to the character of appellant's possession of the disputed tract subsequent to his initial entry thereon, the trial court, in its memorandum decision, noted the change in farming methods over the years from 1928 to 1953 from horse-drawn equipment to mechanized implements, which gave rise to the need for a machine shed and

gasoline tank (two of appellant's improvements), and held that the several acts of appellant in constructing improvements on tract II were not inconsistent with the relationship of tenant and landlord. The court found that these acts were not such as to give respondent notice of any intent that appellant was holding tract II adversely.

The question of adverse possession is a question of fact. *McAuliff v. Parker,* 10 Wash. 141, 143, 38 Pac. 744 (1894); *Murray v. Bousquet,* 154 Wash. 42, 280 Pac. 935 (1929). A review of the record in this case convinces us that the court did not err in resolving that ultimate issue in favor of respondent.

Judgment affirmed.

HILL, C. J., WEAVER, ROSELLINI, and FOSTER, JJ., concur.