[No. 950-1. Division One—Panel 1. June 19, 1972.]

HAROLD F. DIEL *et al., Appellants,* v. HILKELINE G. BEEKMAN, *Respondent.*
HILKELINE G. BEEKMAN, *Respondent,* v. HAROLD F. DIEL *et al., Appellants.*

WILLIAMS, J., concurs in the result only.

*Lindell & Carr* and *Allen Lane Carr*, for appellants.

*Black, Christensen & Nielsen, Andrew T. Nielsen,* and *Rodney A. Boddington,* for respondent.

CALLOW, J.—This matter comes before this court for the second time having been returned previously for trial following reversal of the granting of summary judgment in favor of Hilkeline G. Beekman. *Diel v. Beekman,* 1 Wn. App. 874, 465 P.2d 212 (1970). Following a nonjury trial on the merits, the trial court entered judgment for Mrs. Beekman and Harold F. Diel and his wife again appeal.

Separate actions to quiet title to real property were consolidated for trial. Hereafter we refer to the plaintiff-lessees-appellants as Diels and the defendant-lessors-respondents as Beekmans. The difficulties arose between longtime acquaintances over farm property near Monroe, Washington.

The Diels claim that although the property was purchased in the Beekmans' name and so reflected on the real estate contract that it was the intent of the parties that Beekmans would purchase the property and hold it in their

name in trust for the Diels. It is the position of Mrs. Beekman that the intent of the parties was reflected by the written documents, the real estate contract and the lease, and that no trust was ever intended.

On February 10, 1953, Arnold and Hilkeline Beekman contracted to buy real property from the Harders. The Beekmans paid $5,000 down on the $30,000 purchase price and were to make monthly payments on the real estate contract at the rate of $200 per month until April 1956 when the payments were to be reduced to $150 per month until paid in full, and the purchaser was to pay taxes and insurance. The evidence reflects that payments on this contract were made to a bank, as collecting agent, from 1953 to 1967. In March of 1953, the Beekmans entered into possession. They paid rent from that time on at the rate of $200 per month as reflected on the checks admitted into evidence, and the amount of taxes and insurance was to be paid also.

Arnold Beekman died June 24, 1955. Thereafter Harold Diel served as an appraiser of his estate and signed, on October 14, 1955, the appraisement which reflected the subject property in the estate. The value placed on the property by this appraisement was the amount of principal paid on the real estate contract to the date of death of Arnold Beekman. On July 30, 1956, the Diels entered into a 5-year lease with the surviving spouse, Hilkeline Beekman, as lessor. Under this lease, rent was to be $200 per month, there was no right to sublet without permission, and the lessees had an option to purchase for $25,000 with the rent paid to be applied to the purchase price if the option was "taken up." The rent proved to be too difficult for the Diels to meet, and it was reduced to $150 per month with taxes and insurance to be paid by Diels as under the prior lease.

The court found the facts recited and also found that the interest acquired by Beekmans was a community interest, that the funds used for the downpayment on the real estate contract were borrowed from a bank by the Beekmans and paid to the Harders, and that Diels did not assume an absolute obligation to repay the downpayment to the Beekmans at or prior to the time Beekmans purchased the prop-

erty from the Harders. The court further found that Diels have occupied the property since the day of the purchase, have made improvements, and that after the land was purchased, two fields were transferred to Beekmans which Beekmans have used since. (No deed or other document of transfer was in evidence.) The court also included in its findings that taxes, insurance and rent were paid by the Diels to the Beekmans until the present controversy commenced, whereupon Hilkeline Beekman refused to accept further payment. Finally, the court found that Diels did not file a claim in the estate and that the decree of distribution distributed the property to Hilkeline Beekman.

The trial court was confronted with arguments proposing alternative interpretations of the evidence. We appreciate its difficulty. We note in passing that the lease described in the initial opinion, 1 Wn. App 874, 875, and referred to by counsel for Diels in his opening argument, was offered but not admitted into evidence. The record contains substantial evidence to support the findings as signed, and therefore they must be accepted as verities. *Friedlander v. Friedlander*, 80 Wn.2d 293, 494 P.2d 208 (1972); *Michielli v. U. S. Mortgage Co.*, 58 Wn.2d 221, 361 P.2d 758 (1961); *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

## EXPRESS TRUST

An express trust of real estate may not be established by parol evidence but must be in writing. *Zucker v. Mitchell*, 62 Wn.2d 819, 384 P.2d 815 (1963); *Kausky v. Kosten*, 27 Wn.2d 721, 179 P.2d 950 (1947); *Moe v. Brumfield*, 27 Wn.2d 714, 179 P.2d 968 (1947); *Georges v. Loutsis*, 20 Wn.2d 92, 145 P.2d 901 (1944); *Farrell v. Mentzer*, 102 Wash. 629, 174 P. 482 (1918). RCW 19.36.010, 64.04.010 and 64.04.020 preclude establishing an express trust in land by parol evidence. *Dowgialla v. Knevage*, 48 Wn.2d 326, 294 P.2d 393 (1956). If one agrees to purchase land and give another an interest in it, then does so, pays his own money and takes title in his own name, no trust can result. *Cushing v. Heuston*, 53 Wash. 379, 102 P. 29 (1909). *See In re*

*Estate of Cunningham,* 19 Wn.2d 589, 143 P.2d 852 (1943), for a concise statement of the principles in this area.

We note the alleged agreement by which Diel was to repay the downpayment loan, an oral promise to transfer title to two fields, would violate the statute of frauds. RCW 64.04.010; *Beckendorf v. Beckendorf,* 76 Wn.2d 457, 457 P.2d 603 (1969).

█ However part performance by a beneficiary in possession may remove the transaction from the requirements of the statute. Restatement (Second) of Trusts § 50 (1959); Restatement of Contracts § 197 (1932). While this is true, we must consider whether the facts in this case reflect sufficient part performance to establish an express trust in spite of the absence of a written memorandum.

█ *Farrell v. Mentzer, supra; Spaulding v. Collins,* 51 Wash. 488, 99 P. 306 (1909); and *Borrow v. Borrow,* 34 Wash. 684, 76 P. 305 (1904), discussed the acts which may satisfy the statute and supplant the necessity of a writing. Factors weighed to ascertain if an express trust of land is enforceable, when with the consent of the trustee the beneficiary enters into possession are: (a) making improvements, (b) paying consideration, and (c) changing position in reliance on the trust. The same factors are considered in establishing part performance whether the subject is an express trust of real property or an oral contract for transfer of an interest therein. These factors are to be weighed along with all of the other evidence bearing on the problem to establish whether or not it was the intent of the parties that such a trust would result. Under the established facts in this action, the statement in *Grandquist v. McKean,* 29 Wn.2d 440, 445, 187 P.2d 623 (1947), is apropos:

> Another requirement of the doctrine that part performance may take an oral contract out of the statute of frauds is that the acts relied upon as constituting part performance must unmistakably point to the existence of the claimed agreement. If they point to some other relationship, such as that of landlord and tenant, or may be accounted for on some other hypothesis, they are not sufficient. *Broadway Hospital v. Decker,* 47 Wash. 586, 92 Pac. 445; *Blakely v. Sumner,* 62 Wash. 206, 113 Pac.

257; *Burns v. McCormick,* 233 N. Y. 230, 135 N. E. 273; *Woolley v. Stewart,* 222 N. Y. 347, 118 N. E. 847; *Walker v. Bohannan,* 243 Mo. 119, 147 S. W. 1024.

The possession, improvements and part payment which existed in this case are as consistent with a landlord-tenant relationship as with a trustee-beneficiary relationship. The burden of establishing an express trust by part performance has not been met since the existence of the leases is inconsistent with the latter relationship, and therefore the evidence is insufficient to overcome the barrier of the statute. The record also establishes that the improvements made were consistent with and not contrary to Diels' position as tenants. So also was the transfer of the two fields to Beekmans. The reason for this relinquishment was never established, and it is as consistent with gift, withdrawal or the leases themselves as with a repayment of consideration. When we consider this, together with the entry into possession and paying of rent from 1953, the retention of possession under the lease of 1956, and periodic payments in the amounts set forth in the lease, we concur that the claim of sufficient part performance to establish an express trust must fall. The trial court's finding that an oral trust had not been clearly and unequivocally established as required by *Grandquist v. McKean, supra,* is supported by the evidence.

### RESULTING TRUST

■ An express trust is intentionally created between the parties of the trust agreement while a resulting trust is a trust that results from the facts and circumstances of a situation by implication of law. Express and resulting trusts are contrasted in A. Scott, Trusts § 404.1 (3d ed. 1967), as follows:

An express trust is created only if the settlor manifests an intention to create it, although the manifestation may be made by conduct as well as by words. A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest in the property. In other words, an express trust

is created if it appears that there was an affirmative intention to create it; whereas in the case of a resulting trust the circumstances indicate the absence of an intention to give the beneficial interest to the person in whom the legal title to the property is vested.

(Footnote omitted.) *See also Carkonen v. Alberts,* 196 Wash. 575, 83 P.2d 899, 135 A.L.R. 209 (1938); *In re Estate of Weir,* 134 Wash. 560, 236 P.2d 285 (1925); *Farrell v. Mentzer, supra; Gottstein v. Wist,* 22 Wash. 581, 61 P. 715 (1900); Restatement (Second) of Trusts §§ 440, 441, 448, 457, 458 (1959); 1 H. Tiffany, Real Property §§ 260, 264, 265 (3d ed. 1939).

 *Diel v. Beekman, supra,* described a resulting trust as a trust implied in law from the intentions of the parties to a transaction. It said that if title was taken in the name of a grantee other than the person advancing the consideration, the titular grantee would hold as a resulting trustee for the person who paid the purchase price providing the beneficiary either: (a) paid his consideration over to the trustee at or before the execution of the conveyance or (b) incurred, at that time, an absolute obligation to repay the trustee as part of the original consideration of the purchase. *Carkonen v. Alberts, supra,* reflects the same guidelines.

A resulting trust was found in *In re Estate of Spadoni,* 71 Wn.2d 820, 430 P.2d 965 (1967), where Mr. Spadoni had not entered into possession under a lease. There the beneficiary occupied the property for 26 years, erected improvements, sold portions of the property, negotiated a reconveyance of a portion, paid taxes and acted in every respect as the owner while the trustee did none of these things. There the facts indicated intent that the possessor be the dominant party as to the land and an intent to create a trust. Where, on the other hand, the circumstances indicate an absence of such an intention or a contrary intention, no trust results. *Manning v. Mount St. Michael's Seminary of Philosophy & Science,* 78 Wn.2d 542, 477 P.2d 635 (1970).

*Richards v. Richards,* 5 Wn. App. 609, 611, 489 P.2d 928 (1971), recently declared:

[W]hen property is taken in the name of a grantee who did not advance the consideration, there is a presumption that the grantee holds the legal title subject to the equitable ownership of the person who advanced the consideration. *Lalley v. Lalley,* 43 Wn.2d 192, 260 P.2d 905 (1953). However, the presumption can be overcome by evidence of contrary intention. [Citation omitted.]

. . . the essential fact which must be proved by a claimant seeking to establish a resulting trust is that he in fact paid the purchase price. G. Bogert, Trusts & Trustees § 455 (2d ed. 1964).

. . .

It is not necessary that a resulting trust claimant pay the purchase price *directly.* But the claimant must carry the burden of proving that he *produced* the consideration paid and that he did so *at the time* of the delivery of the instrument of conveyance. [Citation omitted.]

The resulting trust must arise at the time title is transferred to the trustee and when the relationship between the parties was created. It cannot spring from some later agreement not intended initially. *Richards v. Richards, supra; Mading v. McPhaden,* 50 Wn.2d 48, 308 P.2d 963 (1957); *Cushing v. Heuston, supra.*

A resulting trust does not arise out of a contract or agreement between the parties which is legally enforceable but comes in the absence of evidence of other intent. *Lindberg v. Hietala,* 46 Wn.2d 348, 281 P.2d 861 (1955); *In re Estate of Cunningham,* 19 Wn.2d 589, 143 P.2d 852 (1943); *Scott v. Currie,* 7 Wn.2d 301, 109 P.2d 526 (1941).

The requirement of intent was discussed in *Creasman v. Boyle,* 31 Wn.2d 345, 354, 196 P.2d 835 (1948):

An essential element of all species of resulting trusts is *intention,* and the source from which they all derive their conception and application is the equitable theory of *consideration.* The intention to create such a trust is never expressed directly in words, but equity may infer it, in proper cases, upon the ancient equitable principle that the beneficial estate follows consideration and attaches to the party from whom the consideration comes.

In 4 Pomeroy, Equity Jurisprudence (5th ed.), 62, § 1031, the doctrine of resulting trusts is explained in the following language:

"Resulting trusts, therefore, are those which arise

where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the terms of the disposition, or from the accompanying facts and circumstances, that the beneficial interest is not to go or be enjoyed with the legal title. In such case a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom equity deems to be the real owner. This person is the one from whom the consideration actually comes, or who represents or is identified in right with the consideration; the resulting trust follows or goes with the real consideration."

However, the whole doctrine of resulting trusts is founded upon the principle of a presumed *intention* to create a trust; and where the facts and circumstances are such as reasonably indicate an absence of such intention or indicate a contrary intention, the principle should not be applied. 65 C. J. 366, Trusts, § 141; 4 Pomeroy, Equity Jurisprudence (5th ed.), 82, § 1040.

In this case there is evidence of other intent. The intent to enter into a lease arrangement, and therefore a trust for the possessor cannot result. *Miller v. McCamish,* 78 Wn.2d 821, 479 P.2d 919 (1971); *Thompson v. Hunstad,* 53 Wn.2d 87, 330 P.2d 1007 (1958); *Grandquist v. McKean, supra; Broadway Hosp. v. Decker,* 47 Wash. 586, 92 P. 445 (1907).

The burden of proof is on the one asserting the trust. *In re Estate of Cunningham, supra.* He who has this burden and asserts the trust must prove its existence by clear, cogent and convincing evidence. *Miller v. McCamish, supra; In re Estate of Spadoni, supra; Grichuhin v. Grichuhin,* 44 Wn.2d 914, 272 P.2d 141 (1954); *Mouser v. O'Sullivan,* 22 Wn.2d 543, 156 P.2d 655 (1945). If the evidence points to some other hypothesis or does not unmistakably point to the existence of the claimed agreement, then a resulting trust has not been proven. *Thompson v. Hunstad, supra.*

It was the ultimate finding that no obligation to repay was assumed by Diels when Beekmans paid the downpayment to Harders. There is no substantial difference in this context between an "absolute" or an "enforceable" obligation. Merriam-Webster Third Int'l Dictionary (1966) defines "absolute right" as a legally enforceable right.

■ The Diels rely upon the trial court's statements and comments made after both parties had concluded their final arguments. These are without force however, since the findings of fact as signed and entered by the trial court represent his ultimate understanding of the admitted exhibits and the testimony from the witness stand. Prior reflections and observations are integrated into the formal written findings which control. *Ferree v. Doric Co.,* 62 Wn.2d 561, 383 P.2d 900 (1963); *In re Estate of Hooper,* 53 Wn.2d 262, 332 P.2d 1077 (1958); *Johnson v. Whitman,* 1 Wn. App. 540, 463 P.2d 207 (1969). Neither an original intent to create a trust nor an obligation to repay the trustee the consideration he paid is established as a part of the transaction which took place in February and March 1953. Further, the alternate hypothesis of landlord and tenant exists. The difficulties suffered by the trial court make plain the failure of the evidence to clearly, cogently and convincingly prove the existence of a resulting trust.

ADVERSE POSSESSION

Diels propose that they claimed and occupied the land for 17 years and are entitled to it under the 10-year adverse possession statute. RCW 4.16.020.

■ Adverse possession is established by one claiming real property against another by proving (a) actual possession, (b) that was uninterrupted, open, notorious, hostile and exclusive, and (c) under a claim of right made in good faith for the statutory period. *Hill v. L. W. Weidert Farms, Inc.,* 75 Wn.2d 871, 454 P.2d 220 (1969); *Butler v. Anderson,* 71 Wn.2d 60, 426 P.2d 467 (1967); *Rognrust v. Seto,* 2 Wn. App. 215, 467 P.2d 204 (1970). The existence of these elements are questions of fact; and if the trial court's findings are supported by substantial evidence, they will not be overturned. *Krona v. Brett,* 72 Wn.2d 535, 433 P.2d 858 (1967); *El Cerrito, Inc. v. Ryndak,* 60 Wn.2d 847, 376 P.2d 528 (1962); *Turner v. Rowland,* 2 Wn. App. 566, 468 P.2d 702 (1970). The court did not find these elements had been established. Whether the element of possession is adverse or permissive has specifically been held to be a question of fact in *Northwest Cities Gas Co. v. Western Fuel Co.,* 13

Wn.2d 75, 123 P.2d 771 (1942); *Spear v. Basagno,* 3 Wn. App. 689, 477 P.2d 197 (1970); and *Miller v. Jarman,* 2 Wn. App. 994, 471 P.2d 704 (1970).

From 1953 to 1956, the Diels were in possession of the property and paying rent to the Beekmans. From 1956 to 1961, they were in possession under the terms of a 5-year lease. A tenant does not hold real property adversely to his landlord. Such a use is permissive rather than hostile. *Bepple v. Reiman,* 51 Wn.2d 144, 316 P.2d 452 (1957); *Bowden-Gazzam Co. v. Kent,* 22 Wn.2d 41, 154 P.2d 292 (1944); *Rogers v. Cation,* 9 Wn.2d 369, 115 P.2d 702 (1941); *Northern Pac. Ry. v. George,* 51 Wash. 303, 98 P. 1126 (1908).

Diels have claimed throughout the litigation that they were not there as tenants, but as beneficiaries of a resulting trust. One in that status does not claim hostilely against his trustee, his occupancy being considered permissive and subordinate to that of the trustee. *Robertson v. Swayne,* 85 Idaho 239, 378 P.2d 195 (1963); *Bodman v. Martha's Vineyard Nat'l Bank,* 330 Mass. 125, 111 N.E.2d 670 (1953); 4 H. Tiffany, Real Property § 1179 (3d ed. 1939); 2 C.J.S. *Adverse Possession* § 109(e) (1936).

One cannot claim that possession as either a tenant or a cestui que trust is hostile rather than permissive.

The only other position remaining is that entry and possession were hostile and notorious. It is said in *Fisher v. Hagstrom,* 35 Wn.2d 632, 645, 214 P.2d 654 (1950):

> [T]he term "hostile" does not import enmity or ill will, but rather imports that the claimant is in possession as owner, in contradistinction to possession of real property in recognition of or subordination to the title of the true owner. [Citation omitted.]

*See also El Cerrito, Inc. v. Ryndak, supra.* "Hostile and notorious" connotes a quality and character of possession that notifies the owner the possessor claims ownership in opposition to his title and estate. *See* Stoebuck, *The Law of Adverse Possession in Washington,* 35 Wash. L. Rev. 53, 72 (1960), and cases cited therein. This element of adverse possession was not established by the evidence, and each

avenue by which adverse possession could be claimed is closed.

## DEADMAN'S STATUTE

Diels claim it was error to forbid them to relate conversations which supposedly occurred with the deceased, Arnold Beekman, and in precluding the introduction into evidence of answers to interrogatories propounded to Mrs. Beekman. During trial, the court also sustained objections to questioning Hilkeline Beekman regarding any conversation with the Diels that took place in her presence and in the presence of her late husband. RCW 5.60.030, the deadman's statute, states in part:

> [I]n an action . . . where the adverse party sues or defends . . . as deriving right or title by, through or from any deceased person, . . . then a party in interest or to the record, shall not be admitted to testify in his own behalf as to any transaction had by him with, or any statement made to him, or in his presence, by any such deceased . . .

During the trial an offer of proof was made that Diels would testify that the transaction was discussed on three occasions: the first with Mr. and Mrs. Diel and Mr. and Mrs. Beekman present, the second with Mr. Diel and Mr. Beekman present and the third with Mr. Diel and Mr. and Mrs. Beekman present. The offer of proof was that in each of those discussions, the agreed arrangement was that Beekmans would borrow and pay the $5,000 downpayment for the Harder contract, Diels would make the remaining payments on the $25,000 balance and within 3 years Diels would transfer two fields to Beekmans in return for the $5,000 downpayment made by Beekmans.

The objection to the offer was sustained.

The plaintiff claims the evidence should have been allowed because, as to the community half of the surviving spouse, the Diels were not claiming title through Arnold Beekman, deceased, but through Hilkeline G. Beekman, a party to the action. Further, it is the claim of Diels that when Mrs. Beekman answered the interrogatories served, she waived the protection of the statute.

The Washington cases recognize the legislative expression is not to be derogated by judicial interpretation. *See generally* 5 R. Meisenholder, Wash. Prac. § 166 (1965).

In *O'Connor v. Slatter,* 48 Wash. 493, 495, 93 P. 1078 (1908), it is stated, "Death has sealed the lips of one of the parties and the statute imposes the same silence upon the other. The prohibition of the statute is absolute and unconditional. It admits of no qualification or exception, and it is not the province of this court to add to it or take from it."

*Martin v. Shaen,* 26 Wn.2d 346, 352, 173 P.2d 968 (1946), states:

> The prohibition of the statute against the evidence of an adverse party as to transactions had with a person deceased, does not exclude evidence as to who was or was not present at the time of the transaction. However, when it appears that there was a personal transaction by the interested party with the deceased and that the testimony offered tends to show either what did take place between the parties or what did not, it must be excluded by force of the statute so long as it concerns the transaction or justifies an inference as to what it really was.

*See also Hampton v. Gilleland,* 61 Wn.2d 537, 379 P.2d 194 (1963), and comments thereon in 5 R. Meisenholder, Wash. Prac. § 167 (1965).

Other states have taken as strict a stand. *See Pearson v. Bertelson,* 244 Minn. 224, 69 N.W.2d 621 (1955).

The test of transactions with a deceased is whether the dead man, if living, could contradict the witness of his own knowledge. *In re Estate of Wind,* 27 Wn.2d 421, 178 P.2d 731, 173 A.L.R. 1276 (1947). The test of whether a person is a "party-in-interest" is whether they will gain or lose from the judgment. *State v. Robbins,* 35 Wn.2d 389, 213 P.2d 310 (1950); *In re Estate of Tate,* 32 Wn.2d 252, 201 P.2d 182 (1948).

A spouse may testify concerning an interest which would have been the other's separate property since the prohibition of the statute is against a party-in-interest testifying in his own behalf, not on behalf of another. *Griffin v. Lear,* 123 Wash. 191, 212 P. 271 (1923); *Showalter v. Spangle,* 93 Wash. 326, 160 P. 1042 (1916). However, a wife may not

testify in an action brought by the husband seeking to acquire property if the property sought to be acquired would be community. In such a situation, she is an interested party. *McGugart v. Brumback,* 77 Wn.2d 441, 463 P.2d 140 (1969); *Andrews v. Andrews,* 116 Wash. 513, 199 P. 981 (1921).

This transaction concerns a husband and wife, Mr. and Mrs. Diel, both parties-in-interest, seeking to testify as to conversations with a deceased person through whom the adverse party has derived title. The interest they ask to acquire would be their community property. The statute forbids either testifying in his own behalf. *Boettcher v. Busse,* 45 Wn.2d 579, 277 P.2d 368, 49 A.L.R.2d 191 (1954).

The situation we have before us was discussed with foresight in *Adams Marine Serv., Inc. v. Fishel,* 42 Wn.2d 555, 257 P.2d 203 (1953), remarking that even though the transactions there were with a deceased *and* the surviving spouse, the statute would require the disqualification of the witness had he been a party-in-interest. The statute bars the testimony of the party-in-interest and makes him incompetent to testify. It does not provide exceptions. Our statute renders a party-in-interest incompetent to testify to transactions with a deceased when his adversary represents or claims through the deceased.

We normally look upon the statute as being a bar, but it may also be contemplated as a shield. This approach was discussed in *Spencer v. Schell,* 107 Tex. 44, 173 S.W. 867 (1915), which involved a suit on promissory notes given to a decedent husband. In the course of the trial, the defendant offered testimony to establish the payment to the decedent husband of sums due on the note. The Texas court excluded this testimony commenting in part as follows at page 47:

> As has been noted, Mrs. Schell was the plaintiff in the suit in a dual capacity, that is, as the heir of her husband and in her own right as community survivor.
> As a party plaintiff in her own right the testimony was admissible against her. As against her in the capacity of the heir of her husband, it was inadmissible under the statute. If the suit were one for the recovery of distinct

and severable interests, so that the testimony could be limited and applied to the interest against which it was properly admissible, as, for illustration, where one sues in his own right and is joined by heirs, each seeking the recovery of a separate interest, the question would not be one of difficulty. . . . But here the interests upon which the recovery is sought are not severable. They are joined in the same person, and the right to their enforcement constitutes an indivisible cause of action. It would be impossible, for instance, as a practical proposition to limit the effect of this testimony simply to the interest in these notes of Mrs. Schell as the community survivor. It was not proposed to be shown by the proffered testimony that the payments to which it related were made to Wallace Schell otherwise than upon the notes generally. There could be, accordingly, no warrant for applying them solely to either Mrs. Schell's community interest or her inherited interest. From its nature, the testimony would necessarily affect both interests, and its effect is incapable of limitation.

The correct solution of the question is not unattended with difficulty, for there is apparent force in the contention that with the suit being prosecuted by the plaintiff equally in her individual capacity, its character as an action for the enforcement of rights held in her representative capacity should not operate to bring it within the statute. It seems to us, however, that only by a plain contravention of the statute can the testimony under the conditions present in this case be held competent.

The restriction of the Texas statute is like that in the Washington statute. The protection is unqualified and one who derives a right from a deceased, be it partial, total, separate or community, will not have testimony by a party-in-interest forced into the record over his objection.

The rule has been followed in *Kemp v. Metropolitan Life Ins. Co.,* 205 F.2d 857 (5th Cir. 1953) and *Ball v. Parks,* 278 S.W.2d 189 (Tex. Civ. App. 1955).

The testimony was not admissible and was excluded properly. We may not dilute the plain wording of the legislature. *See also* Annot., 27 A.L.R.2d 538, 549 (1953); 22 A.L.R.2d 1068 (1952); 90 A.L.R.2d 1377 (1934).

Propounding pretrial discovery interrogatories does not waive RCW 5.60.030. *McGugart v. Brumback, supra* at 449 says:

Therefore, we hold the mere taking of a deposition or propounding of interrogatories is not a waiver of the statute's (RCW 5.60.030) bar when the deposition or interrogatories are not introduced in evidence by a representative of the estate. *Cf., Percy v. Miller,* 115 Wash. 440, 197 P. 638 (1921), involving a special discovery proceeding in probate wherein we adopted a rule consistent with the position we take here. Our earlier cases to the contrary are overruled insofar as they are inconsistent with this view.

The trial court's ruling that defendant had waived the bar of the statute by propounding interrogatories was therefore error. Plaintiff is precluded by the statute from testifying concerning his transactions with the deceased. Likewise, it is well settled that plaintiff's wife is an interested party within the bar of the statute, because any recovery by plaintiff from decedent's estate would inure to the benefit of the community composed of plaintiff and his wife. . . . Therefore, the trial court's ruling admitting plaintiff's wife's testimony concerning transactions with the deceased was also error.

(Footnote omitted.) *See also Hortman v. Henderson,* 434 F.2d 77 (7th Cir. 1970); 5 Gonzaga L. Rev. 302 (1968); Annot., 35 A.L.R.3d 955 (1971); Annot., 23 A.L.R.3d 389 (1969).

Material discovered through the use of pretrial discovery procedures is not necessarily admissible in evidence. Discovery is available for searching out that which may not be admissible, but which may lead to evidence admissible at trial. CR 26(b), 33(b), 34. Inherent in the propounding of interrogatories or the taking of a deposition is that answers will be forthcoming as an unanswered question amounts to naught. No useful purpose would be served by requiring a party entitled to the protection of RCW 5.60.030 to preserve that protection by resisting discovery until a court order commanded compliance. Unless the package of questions and answers includes testimony forbidden by the statute and the adverse party representing the estate introduces the material himself, the protection of the statute has not been waived.

The law forbidding testimony by a party-in-interest concerning conversations with a deceased may be waived by

the adverse party. The record is clear that Mrs. Beekman never waived the protection of the statute. As was said in *Jones v. Peabody,* 182 Wash. 148, 154, 45 P.2d 915, 100 A.L.R. 64 (1935):

> We recognize that the protection of the statute may be waived, but we find nothing in the record in this case from which it could be concluded that there was such a waiver. From the beginning of the trial, the respondents proceeded with great care to avoid breaking down the bar of the statute, as they had a right to do. The statute applies to this proceeding, and there was no error in rejecting the offers of proof.

*See also Wittbrot v. Anderson,* 262 F. Supp. 10 (W.D. Mich. 1966).

### ADMISSION OF COURT FILE

The admission of the probate file of the estate of Arnold Beekman as an exhibit is challenged. During the course of the proceedings, the inventory and appraisement in that estate was admitted without objection and just before Beekman's counsel rested he offered in evidence the remainder of the file. This was objected to on the basis of relevancy. Whether evidence is inadmissible on that basis is within the discretion of the trial court, and the trial court's ruling should not be disturbed unless clearly wrong. The admission of the probate file in this trial before the court would not have a tendency to mislead, distract, waste time, confuse or impede the trial, these being the elements by which relevancy is measured. This action was not improper. *Ladley v. Saint Paul Fire & Marine Ins. Co.,* 73 Wn.2d 928, 442 P.2d 983 (1968); *Coleman v. Dennis,* 1 Wn. App. 299, 461 P.2d 552 (1969).

### SUPERSEDEAS BOND

The parties are in contention regarding funds held in trust by one of the attorneys in lieu of a supersedeas bond and additional sums which the trial court required to be deposited for the same purpose. The disposition of those funds should be handled by the superior court consistent with its prior orders thereon and in accordance with this opinion. CAROA 23(3).

157

The decree quieting title in Hilkeline Beekman is affirmed, and the cause is remanded for the purpose indicated.

JAMES, J., concurs.

WILLIAMS, J., concurs in the result.

Petition for rehearing denied September 25, 1972.

Review denied by Supreme Court November 8, 1972.