7 Wn. App. 453 (1972)
500 P.2d 1288
ANITA M. ROTHMAN, Appellant,
v.
NORTH AMERICAN LIFE AND CASUALTY COMPANY, Respondent.
No. 543-2.
The Court of Appeals of Washington, Division Two.
August 2, 1972.
Duane Lansverk and John Morse (of Landerholm, Memovich, Lansverk, Whitesides, Marsh, Morse & Wilkinson), and Earl W. Jackson, for appellant.
Dale W. Read (of Jones, Read & Church), for respondent.
PETRIE, C.J.
Anita M. Rothman brings this appeal from a judgment for the defendant, North American Life and Casualty Company, in her suit to collect the face amount of a policy of insurance on the life of her husband, Charles E. Rothman. Mr. Rothman died as the result of a gunshot wound on August 6, 1969 within 2 years of the policy's issue. In the event of death of the insured by suicide within 2 years of the date of issue of the policy the company's liability under the policy was limited to return of the amount of premiums paid. By way of affirmative defense, the defendant company alleged that Mr. Rothman died "as the result of suicidal, self-inflicted gunshot wound." The jury determined the death was a suicide and returned a verdict for defendant.
The single question for our review is whether or not the trial court erred in refusing to admit into evidence a personalized *454 check in the amount of $5, made payable to Olallie Lake Store and signed by Charles E. Rothman. The check was dated August 6, 1969, the date on which the insured died, and had not been negotiated. Plaintiff identified her husband's handwriting on the check, testified that it was found among his personal belongings at the time of death, and offered it as evidence that her husband had the intent to live  that he intended to go to Olallie Lake Store and that he expected to need money. There was no objection to the admissibility of the check other than to its relevancy and materiality. Defendant's objection was based on its argument that, due to the inability to ascertain when in fact the check had been written by the insured, the check had no probative value or bearing upon the issues. Because there was no evidence to prove that the check was actually written on August 6, 1969, the trial court held the check inadmissible as too speculative to be of probative value in determining whether or not the insured intended to commit suicide.
Charles E. Rothman was found dead from a bullet wound to his head at approximately 8 o'clock on the morning of August 6, 1969. His body was discovered in the front seat of his car, which was stopped with the engine still idling in the center of the road leading to Olallie Lake Resort in Oregon. Apparently, the car had proceeded only 30 feet after turning off the main road onto the road to the resort. The resort was approximately 250 feet off the main road. The car was loaded with camping equipment, an ice chest, food and a motorbike.
Two guns were lying on the front seat beside the body, one  a.45 caliber automatic enclosed in a holster, the other  a .44 magnum revolver which fired the fatal shot. The wound was not a contact wound, but was from a shot which had been fired at a distance from the head. The bullet struck a glancing blow to the right frontal area of the head after striking the right side of the insured's glasses. A test for nitrates on the insured's hand was negative *455 although the test was not made until the following day after the body had been handled and moved.
Mr. Rothman had recently purchased the death weapon and had test-fired it approximately 2 weeks before his death. On that occasion the gun misfired as he attempted to adjust a loose pin on the cylinder. The pin was still loose when examined after the insured's death. There was evidence that the loose pin made the gun defective, permitting the hammer to trip at either of two partially cocked positions at which the gun was not meant to fire. There was also evidence that the gun had a very light trigger.
The insured's half-brother testified that the insured had on occasion talked of taking his own life. The brother associated this with the consumption of alcohol, stating that the insured could not handle liquor well and that he became despondent or low when he drank. Laboratory tests showed the insured had a blood alcohol level of .10 per cent by weight at the time of his death. The brother further testified that a week or two before his death, the insured had come to his law office in Portland to discuss a divorce. After discussing the divorce and some personal problems the insured indicated that a solution might be to take his life and that, if he did, he would do it at Olallie Lake where he had been most happy. The brother did admit, however, that he had never had a close relationship with the insured and that he had an active dislike for the plaintiff, his half-brother's wife.
Plaintiff, on the other hand, presented evidence showing that her husband enjoyed a happy home life with her and their 2 1/2-year-old daughter in Vancouver, Washington; that he was happy at his work and that he had never mentioned taking his own life. Her evidence showed that the insured enjoyed the outdoors and firearms and that he was on his way to go camping at Olallie Lake Resort, his favorite place to go for such activities. The insured had never talked of taking his own life with either his wife or his best friend in whom he confided.
*456 [1] In the trial of a case, any circumstance is admissible which reasonably tends to establish the theory of the party offering it, or to explain, qualify, or disprove the testimony of his adversary. Robertson v. O'Neill, 67 Wash. 121, 120 P. 884 (1912); Bloomquist v. Buffelen Mfg. Co., 47 Wn.2d 828, 289 P.2d 1041 (1955). All facts which support a reasonable inference on a contested matter and any circumstances whereby an alleged fact may be proved or disproved are relevant. Chase v. Beard, 55 Wn.2d 58, 346 P.2d 315 (1959). Clearly, under the factual setting of this case, a check dated on the date of death, written by the deceased, made payable to a merchant whose store was within walking distance of the place where death occurred, and found among the decedent's personal belongings at the time of death is relevant to the issues presented by the pleadings. Evidence which has some logical proof tendency may nevertheless be excluded if it also has a tendency to mislead, distract, waste time, confuse or impede the trial. See Diel v. Beekman, 7 Wn. App. 139, 499 P.2d 37 (1972). Coleman v. Dennis, 1 Wn. App. 299, 461 P.2d 552 (1969). None of these additional tendencies appear to be present in this case.
Depriving the jury of the evidentiary value of the check so they may evaluate its weight along with all the other evidence was clearly erroneous.
Judgment reversed and remanded for new trial.
PEARSON and ARMSTRONG, JJ., concur.
Petition for rehearing denied September 19, 1972.
Review denied by Supreme Court November 8, 1972.